ASSOCIATION OF FLIGHT
ATTENDANTS, AFL–CIO,
Appellant,

v.

DELTA AIR LINES, INC.

No. 87–7040.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 15, 1988.
Decided July 18, 1989.

Deborah Greenfield, Washington, D.C., for appellant. David A. Borer, Columbus, Ohio, entered an appearance for appellant.

Scott A. Kruse, with whom Michael H. Campbell, Paul D. Jones, Robert S. Harkey and William J. Kilberg, Washington, D.C., were on the brief, for appellee. Baruch A.

Fellner, Washington, D.C., entered an appearance for appellee.

Before MIKVA, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

This appeal arises from a labor dispute involving the 1987 merger of Western Airlines, Inc. into Delta Air Lines, Inc. The Association of Flight Attendants, which represented Western's flight attendants prior to the merger, filed suit in the district court seeking an order compelling Western to arbitrate the question whether Western breached the "successorship clause" in its collective bargaining agreement (CBA) with AFA by failing to bind Delta to the Agreement. The district court dismissed the action, holding that it involves a representative dispute under § 2, *Ninth* of the Railway Labor Act, 45 U.S.C. § 152, *Ninth,* and thus comes within the exclusive jurisdiction of the National Mediation Board. 662 F.Supp. 1, 3 (D.D.C.1987).

The Union appealed and, as discussed below, on Western's motion, we held that some of AFA's claims for relief are moot. The questions now before us are (1) whether AFA's remaining claim is moot in light of the consummation of the Delta–Western merger and the subsequent determination by the NMB retroactively to extinguish AFA's certificate as bargaining representative for Western's flight attendants; and (2) if AFA's remaining claim is not moot, whether the district court has subject matter jurisdiction over it.

## I. Factual Background

Prior to its acquisition by Delta, Western entered into a CBA with the Union, in which it recognized AFA "as the duly designated bargaining agent for the Flight Attendants in the employment of [Western]," and as required by the Act, 45 U.S.C. § 184, established a System Board of Adjustment "for the purpose of adjusting and deciding disputes which may arise under the terms of the Flight Attendant's Agree-

ment...." The agreement conferred upon the System Board "jurisdiction over disputes ... growing out of grievances or out of interpretation of [or] application of any of the terms of the Flight Attendants' Agreement."

In addition to these essentially standard terms, the CBA contained the following successorship provision:

This agreement shall be binding on any successor or merged Company or Companies, or any successor in the control of the Company, its parent(s) or subsidiary(ies) until changed in accordance with the Railway Labor Act, as amended.

In September 1986, Western entered into a merger agreement with Delta. Under the terms of this agreement, the merger would be affected in two steps: (1) on December 18, 1986, Delta would acquire 100% control of Western; and (2) on April 1, 1987, Western would be merged into Delta and cease to operate as a separate entity. The merger agreement provided that Western would honor its CBAs as long as they remained in effect, but did not purport to bind Delta to Western's CBAs.

In October 1986, AFA filed a grievance against Western. Specifically, AFA asserted that Western had a contractual duty to bind any successor to the CBA and that it breached that duty by agreeing to merge with Delta without so binding it. Western denied the grievance on the ground that it raised "representation issues within the exclusive jurisdiction of the National Mediation Board." AFA then submitted the dispute to the System Board, but Western refused to arbitrate.

Shortly after the first step of the merger took effect, AFA brought this action in the district court to compel arbitration. In its complaint, AFA alleged that its grievance raised a "minor dispute" under the RLA and thus fell within the jurisdiction of the System Board. AFA sought an order directing Western to submit to expedited arbitration before the System Board for a determination whether it had breached the CBA, or in the event that the court did not expedite arbitration, preserving the status

quo pending proceedings before the System Board.

In a memorandum submitted to the district court in support of its motion for summary judgment, AFA suggested that in the event the System Board were to rule in its favor, available relief might take the form of: (1) an order binding Delta to the terms of the CBA, "including the provisions recognizing AFA" as the exclusive representative of Western's flight attendants; or (2) an order requiring Western (a) to bind Delta to the CBA as a condition of its consummating the merger; and (b) to continue to operate as a separate entity; or (3) a declaration that without a term in the merger agreement binding Delta to the CBA, the merger could not occur; or (4) a determination that Western would be required to respond in damages in the event that it failed to bind Delta to the CBA.

In February 1987, the district court dismissed the action on the ground that AFA's complaint raised a "representation dispute" within the exclusive jurisdiction of the NMB. 662 F.Supp. at 3. Accordingly, the court held that it lacked jurisdiction to grant the relief sought by AFA, and dismissed the action with prejudice. AFA then filed the appeal now before us.

While AFA was pursuing this action in the district court, two other Western unions challenged the Delta–Western merger in the District Court for the Central District of California. They, too, sought both an order compelling arbitration of their claim that Western had breached the successorship clauses in their CBAs by failing to bind Delta to those agreements, and an injunction against consummation of the merger pending arbitration. The district court denied the requested relief, but the Ninth Circuit, on March 31, issued an order (1) directing the district court to enter orders compelling arbitration; and (2) enjoining the merger until either (a) completion of arbitration proceedings; or (b) entry of a stipulation by Western and Delta that the result of the arbitration would bind the successor corporation. *IBTCWHA v. Western Airlines, Inc. (Teamsters)*, 813 F.2d 1359, 1364 (9th Cir.1987). On April 1, however, the scheduled date of the operational merger, Justice O'Connor granted the carriers' *ex parte* application for a stay of the Ninth Circuit's order. 480 U.S. 1301, 107 S.Ct. 1515, 94 L.Ed.2d 744 (1987) (in chambers). With the injunction thus lifted, the second step of the Delta–Western merger took place as planned, Western ceased to exist as a separate operating entity, and Delta refused to recognize either the CBA or AFA's status as the representative of the former Western flight attendants.

Shortly thereafter, Delta petitioned the NMB to "determine whether the Board's certifications of the Western labor organizations as collective bargaining representatives of the various crafts or classes at Western have been extinguished or terminated effective April 1, 1987." *In re Delta Air Lines, Inc. and Western Air Lines, Inc.*, 14 N.M.B. 291 (1987). On July 9, the NMB ruled that, the merger having eliminated Western as a separate operating identity, the certifications of the Western unions (including AFA) that represented a minority of their crafts in the merged entity were extinguished retroactively to April 1. *Id.* at 301.

On October 5, 1987, the Supreme Court granted *certiorari* in the *Teamsters* litigation, vacated the decision of the Ninth Circuit, and remanded the case for that court to consider whether it was moot. 484 U.S. 806, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987). Thereafter, the Ninth Circuit, having requested and received briefing on the issue of mootness, issued a *per curiam* order dismissing that action as moot. 854 F.2d 1178 (9th Cir.1988).

Meanwhile, Delta had moved to dismiss this appeal on the ground that the NMB's retroactive decertification of AFA rendered it moot. Another panel of this court held, on June 6, 1988, that "Appellant's claim based on any right of continued representation" was moot, but that it was "not clear whether an arbitrator could award damages for breach of the collective bargaining agreement." Accordingly, the court denied Delta's motion but ordered the parties to limit their briefs to that issue. We turn

now to the question left open in our order of June 6.

## II. MOOTNESS

■ By virtue of "the constitutional command that the judicial power extends only to cases or controversies," a federal court lacks jurisdiction over a case that has become moot. *Powell v. McCormack*, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491 (1969). A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," but as long as some issues remain alive, "the remaining live issues supply the constitutional requirement of a case or controversy." *Id.* at 496, 497, 89 S.Ct. at 1950–51, 1951.

■ Even though a claim for injunctive or declaratory relief has been rendered moot by intervening events, which our June 6 order indicates happened here, a claim for damages keeps the controversy alive if that claim "is not so insubstantial or so clearly foreclosed by prior decisions that th[e] case may not proceed." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). *See also Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 459, 77 S.Ct. 912, 919, 1 L.Ed.2d 972 (1957) (request for order to arbitrate not moot because arbitrator could award damages); *Ellis v. Brotherhood of Railway Clerks*, 466 U.S. 435, 441–42, 104 S.Ct. 1883, 1898, 80 L.Ed.2d 428 (1984). Thus, the question whether the consummation of the merger and the decertification of AFA rendered this case moot turns upon whether AFA appears to state a claim upon which it could recover in arbitration an award of damages against Western for breach of the successorship provision in the CBA.

Delta's principal argument is that in order to award damages to AFA, the arbitrator would first have to find that the CBA entitled the Union to represent Western's flight attendants after the merger; and that any such finding would contravene the NMB's determination to decertify AFA as of the merger date, thus "encroach[ing] upon the NMB's exclusive jurisdiction" over representation disputes. Since the NMB has already exercised its jurisdiction with respect to the Delta–Western merger, the argument runs, this court no longer has the power to grant the relief that AFA seeks, *viz.*, an order compelling Delta to arbitrate the Union's grievance.

Delta's argument is framed in terms of mootness, but it necessarily implicates the statutory question whether AFA's claim for damages is within the exclusive jurisdiction of the NMB, since if it is not, the predicate underlying Delta's argument would fail. Although that question could plausibly be resolved on mootness grounds, we think it is more properly addressed in terms of the district court's subject matter jurisdiction over the damage aspect of this case. *Cf. Marshall v. Local Union No. 639, Int'l Brotherhood of Teamsters*, 593 F.2d 1297, 1301 n. 16 (D.C.Cir.1979) (court may decide issue of subject matter jurisdiction where both jurisdiction and mootness questions are raised and where "the two are partially interlocked"). As set forth in Part III below, we conclude that the district court has jurisdiction over AFA's damage claim.

Delta argues in the alternative that even if the district court has jurisdiction, AFA cannot possibly demonstrate a claim for damages because (1) at all times prior to April 1, Western properly recognized AFA under the terms of the CBA; and (2) the NMB's decertification of AFA divested it of any right it may have had to enforce its agreement with Western after that date. Delta also argues, in a similar vein, that even if the successorship clause of the CBA required Western to bind Delta to that agreement, Delta's voluntary recognition of AFA would, by virtue of the NMB's retroactive decertification of AFA, be "superseded and rendered ineffective at the very moment it was supposed to become effective upon the merger."

Neither of these arguments is entirely responsive to the issue. AFA does not now dispute that the NMB's decertification order deprived it of any right to represent Western employees beyond the April 1

merger date, and this court has already held that any claim seeking to assert such a right would be moot. That AFA no longer has the right to specific enforcement of the successorship clause, however, simply does not answer the question whether Delta is answerable in damages for Western's alleged pre-merger breach of that clause. (Delta does not dispute that, as a general rule, grievances arising before expiration of a CBA survive and continue to be governed by its terms. *See Elgin, Joliet & Eastern Railway Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). *Cf. Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 250–52, 97 S.Ct. 1067, 1071–72, 51 L.Ed.2d 300 (1977) (same under NLRA)).

Assuming, as we must in this context, that Western was obliged by the successorship clause to bind any merger partner to the CBA, an arbitrator might find that Western was required to structure the merger so as to preserve itself as a separate operating entity. In that event, the arbitrator might also find that the NMB's determination to extinguish AFA's certification as representative of the former Western flight attendants was a foreseeable consequence of Western's breach, and that the carrier is liable to AFA for its contract damages. The situation would be no different analytically if the CBA had expressly provided for a sum of liquidated damages in the event that Western breached the successorship clause. Neither of Delta's theories explains why the arbitrator could not award relief in the form of damages based upon such a breach.

Delta points out that the Ninth Circuit held that the *Teamsters* litigation was moot, 854 F.2d at 1178, even though the plaintiff unions there argued, as does AFA here, that even if their claims for injunctive and declaratory relief were moot, an arbitrator could still award damages for breach of the successorship clauses in their CBA's.

The argument was indeed made in the briefs before the Ninth Circuit, yet in its *per curiam* order dismissing the *Teamsters* actions, the court made no mention of it. Indeed, the court characterized the relief requested as merely "an order compelling Western to arbitrate and an injunction prohibiting the merger," and concluded that in light of the intervening consummation of the Delta–Western merger, "none of the relief sought in the original complaint is now available." *Id.* Were the Ninth Circuit decision binding precedent in this circuit, it might give us greater cause for concern, since its judgment necessarily, if implicitly, rejected all of the arguments that the unions made. Because the court did not explain why it rejected the unions' argument that their damage claim was live, however, its decision adds no persuasive force to the arguments already advanced by Delta in this action.

For the reasons given above, we conclude that AFA's damage claim is not "so insubstantial or so clearly foreclosed by prior decisions that th[e] case may not proceed," *Memphis Light*, 436 U.S. at 9, 98 S.Ct. at 1560, and turn to the question of the district court's subject matter jurisdiction over that claim.

### III. JURISDICTION

Section 2, *Fourth* of the RLA, which establishes the right of covered employees to bargain collectively, also provides that "the majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class." 45 U.S.C. § 152, *Fourth*. Section 2, *Ninth* of the Act provides:

If any dispute shall arise among a carrier's employees as to who are the representatives of such employees ..., it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier.

45 U.S.C. § 152, *Ninth*. Section 2, *Ninth* further provides that upon receipt of a certification from the RLA, "the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter." *Id.*

In *Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), the Supreme Court held that the NMB's power to resolve "any dispute ... among a carrier's employees as to who are the representatives of such employees" is exclusive. *Id.* at 303, 64 S.Ct. at 98. The right of a majority of the employees to choose the bargaining representative is protected by the NMB's certification power under § 2, *Ninth,* to the exclusion of any concurrent judicial protection. *Id.* at 301, 64 S.Ct. at 97.

In reaching this conclusion, the Court looked to the structure and legislative history of the RLA, and there found that Congress has consistently expressed a strong preference for "conciliation, mediation, and arbitration," providing judicial remedies only in specific narrow circumstances. *Id.* at 302, 64 S.Ct. at 97–98. Against that background, the Court concluded that "Congress intended to go no further in its use of the processes of adjudication and litigation than the express provisions of the Act indicate." *Id.* The Court further noted that Congress intended the NMB finally to resolve "jurisdictional disputes between unions," and concluded that "if Congress had desired to implicate the federal judiciary and to place on the federal courts the burden of having the final say on any aspect of the problem, it would have made its desire plain." *Id.* at 303, 64 S.Ct. at 98.

The Court then found that a district court has no power either to review the NMB's certification of a representative, or to make such a certification itself, but that it does have the power, which the Board itself lacks, to enforce the NMB's certification:

> The Mediation Board makes no "order." And its only ultimate finding of fact is the certificate. The function of the Board under § 2, Ninth is more the function of a referee. To this decision of the referee Congress has added a command enforcible by judicial decree.

*Id.* at 304, 64 S.Ct. at 98.

The Court's opinion in *Switchmen's Union* leaves open two questions central to this dispute. First, apart from a challenge by one union to the merits of the NMB's certification of another union, such as that case presented, what types of claims constitute "jurisdictional disputes" and are thus within the NMB's jurisdiction? Second, may a party laying claim to a remedy that the NMB cannot give seek relief elsewhere, either through court-ordered arbitration, or in the district court itself?

The Court suggested an answer to the second question in *General Committee of Adjustment v. Missouri–Kansas–Texas Railroad Co.,* 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943) (M–K–T), a companion case to *Switchmen's Union* involving a dispute between two unions, representing separate crafts of locomotive employees, over the correct system for handling cross-assignments and promotions from one craft to another. Although the precise question presented in *M–K–T,* as in *Switchmen's Union,* was whether a court could hear a representation dispute between two unions, the Court strongly suggested that arbitration is available for the pursuit of a remedy unavailable from the NMB.

The Court again noted that in enacting the RLA, Congress "entrusted large segments of this field to the voluntary process of conciliation, mediation, and arbitration," while singling out only certain disputes, such as those covered by § 2, *Ninth,* for resolution by the NMB (aided by judicial enforcement of any certification so obtained). 320 U.S. at 332, 64 S.Ct. at 150. The Court then concluded that a jurisdictional dispute was not properly brought into court if, although not within the jurisdiction of the NMB, it could be resolved through arbitration:

> However wide may be the range of jurisdictional disputes embraced within § 2, Ninth, Congress did not select the courts to resolve them. To the contrary, it fashioned an administrative remedy and left that group of disputes to the National Mediation Board. If the present dispute falls within § 2, Ninth, the administrative remedy is exclusive.

If a narrower view of § 2, Ninth is taken ..., the conclusion is irresistible that Congress carved out of the field of conciliation, mediation and arbitration only the select list of problems which it was ready to place in the adjudicatory channel. All else it left to those voluntary processes whose use Congress had long encouraged to protect these arteries of interstate commerce from industrial strife.

*Id.* at 336–37, 64 S.Ct. at 152. The Court emphasized that whatever the proper scope of the NMB's jurisdiction, "[b]eyond the mediation machinery furnished by the Board lies arbitration." *Id.* at 332, 64 S.Ct. at 150.

*Switchmen's Union* and *M–K–T* lay down several principles relevant to the present dispute. First, the Court made it perfectly clear in both cases that only the NMB may certify an employee representative. Second, the Court in *Switchmen's Union* suggested that the scope of the NMB's power under § 2, *Ninth,* is narrowly limited to determining the representative and issuing its certificate. Finally, the Court's analysis in *M–K–T* strongly suggests that if a dispute is not governed by § 2, *Ninth* it is not precluded, but rather may be pursued through the voluntary processes, such as arbitration, that Congress made the norm.

These principles do not resolve, but they do inform, our resolution of the precise issues before us, which are: (1) whether AFA's remaining claim raises a "dispute ... as to who are the representatives of [Western's] employees" within the meaning of § 2, *Ninth* of the RLA; and (2) assuming this action is not technically within the NMB's jurisdiction, whether the relief sought by AFA is nonetheless precluded on the ground that the complaint raises—as Delta calls them—"representation issues."

### A. *Jurisdictional disputes*

■ All of the courts of appeals to have considered the issue (as this court has not) have held that the question whether a union's certification survives an airline merger is a matter within the exclusive jurisdiction of the NMB. *See International Ass'n of Machinists v. Northeast Airlines, Inc.,* 536 F.2d 975, 977 (1st Cir.1976); *Air Line Pilots Ass'n v. Texas Int'l Airlines, Inc.,* 656 F.2d 16, 23–24 (2d Cir.1981); *International Brotherhood of Teamsters v. Texas Int'l Airlines, Inc.,* 717 F.2d 157, 159 (5th Cir.1983); *Brotherhood of Ry. Clerks v. United Air Lines, Inc.,* 325 F.2d 576, 579–80 (6th Cir.1963); *Air Line Employees Ass'n v. Republic Airlines, Inc.,* 798 F.2d 967, 968–69 (7th Cir.1986). The result is no different if the union frames its action as a contract dispute arising from a successorship clause in a CBA. A claim seeking either specific performance of such a clause or a declaration that it is binding is nonjusticiable because the relief sought is, in effect, a certification within the meaning of § 2, *Ninth;* and as such, it is within the exclusive competence of the NMB. *See, e.g., Brotherhood of Ry. Clerks,* 325 F.2d at 579–80. *See also Texas Int'l Airlines,* 717 F.2d at 162 ("The form of the complaint [does] not control, for the substance of the dispute in fact involve[s] the question of representation of the employees."); *Brotherhood of Ry. Clerks,* 325 F.2d at 579 ("Even though an action is brought as one sounding in contract the courts have no jurisdiction 'where "validity" of the contract depends upon the merits of a representation dispute.' ") (citation omitted).

The principle that a court lacks power to declare, even in an action framed so as to sound in contract, whether a union may continue to represent employees in the post-merger context, is supported, if not compelled, by the Supreme Court's analysis in *General Committee of Adjustment v. Southern Pacific Co.,* 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943). There one of the carrier's unions sought a declaratory judgment invalidating a CBA insofar as it purported to designate another union as the representative of certain employees. The Court held that the action, though framed as a dispute over the validity of the CBA, was in substance a "jurisdictional dispute," since it "raise[d] the question whether one collective bargaining agent or the other is the proper representative for the presentation of certain claims to the

employer." *Id.* at 343, 64 S.Ct. at 145. Seeing "no reason for differentiating this jurisdictional dispute from [those involved in *Switchmen's Union* and *M–K–T*]," the Court held that it fell within the exclusive jurisdiction of the NMB. *Id.* at 343–44, 64 S.Ct. at 145.

Application of the *Southern Pacific* principle to an action seeking either injunctive or declaratory relief with respect to the successorship clause of a CBA clearly advances the policies underlying the RLA, as implemented by the NMB. Congress entrusted the NMB with exclusive power to resolve representation disputes between unions because of the inherent divisiveness of such disputes and the strong interest of the parties in nonetheless "get[ting] the matter settled." *Switchmen's Union,* 320 U.S. at 303, 64 S.Ct. at 98.

The NMB has in turn adopted the rule that when two or more airlines merge their operations, the certificate of any union representing only a minority of the relevant employees of the merged carrier is extinguished, to be replaced by whatever new certificate the NMB may grant with respect to representation of the employees of the merged entity as a whole. *Republic Airlines, Inc. and Hughes Air Corp.,* 8 N.M.B. 49, 54–55 (1980). As Judge Rubin of the Court of Appeals for the Fifth Circuit explained in the context of a merger between a unionized airline and a non-union airline, post-merger judicial enforcement of any provision of a pre-merger CBA would undermine the NMB's rule, because it would necessarily entail the union's continued representation of its former constituents, regardless of whether they constitute a majority of their class in the merged enterprise; as a result, some employees could be represented while others in the same class would not be. *Texas Int'l Airlines,* 717 F.2d at 163. For a court even to "grant injunctive relief maintaining the status quo if the underlying dispute is representational in nature" would be problematic, the court observed, "because to do so would necessarily have the effect, at least during the period of the injunction, of deciding the representational issue." *Id.* at 161. The court therefore inferred "a con-gressional intent to allow [the NMB] alone to consider the post-merger problems that arise from existing collective bargaining agreements." *Id.* at 164.

■ Relying on the cases canvassed above, Delta argues that AFA's claim raises a representation dispute under § 2, *Ninth,* and that as a result "[a]ny order of this Court or any award of an arbitrator in AFA's favor in this dispute inevitably would invade the NMB's exclusive jurisdiction over representation issues and exceed the Court's or the arbitrator's jurisdiction." Delta's conclusion is not compelled by the cited cases, however, since in each one (with a single exception discussed more fully below), the union sought not damages, but rather a declaration or an injunction that would have given it an ongoing right of representation—truly the functional equivalent of the certificate that the NMB alone can issue. The courts found, quite sensibly, that these nominal contract claims were *de facto* claims to judicial certification of the plaintiff union's representative status. To entertain such a case would not only violate the spirit of the Supreme Court's teaching, it could also create a situation where, contrary to NMB policy, employees working side by side would be represented by different unions (or some would be represented and others not) and subject to diverse terms of employment.

An award of damages for a past breach of contract, on the other hand, would not have those untoward results. First, the NMB's policy of revoking a minority union's certificate as of the date of an operational merger would not be affected if it were later determined that the carrier, by agreeing to the terms of the merger, had breached its CBA. The merger would not be undone; the old CBA would not be reinstated; all employees in any one craft would still be subject to uniform terms of employment. Second, an award of damages would have no effect on the NMB's certification determination. The plaintiff union's pre-merger status as representative would not be revived, nor could any factual finding by an arbitrator in a damage action for breach of the CBA either overturn or

predetermine the NMB's decision certifying a post-merger representation. Finally, a damage award, unlike prospective relief, would not cause any confusion as to which union is the proper post-merger representative. The NMB would make that determination as usual; the employees would continue to be represented by the sole representative it has certified; and any failure on the part of the employer to "treat with" the certified representative would be remediable in federal court, regardless of any determination that the arbitrator might make in the course of deciding the damage case.

Delta points, however, to Justice O'Connor's opinion staying the injunction in the *Teamsters* litigation, and notes that although there was a damage issue in that case, Justice O'Connor nonetheless looked to the "great weight of the case law" holding that "disputes as to the effect of collective-bargaining agreements on representation in an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board." 480 U.S. at 1305, 107 S.Ct. at 1517. Delta would have us read Justice O'Connor's opinion as standing for the unqualified proposition that (in the carrier's words) all "disputes over labor contract successorship clauses are within [the] NMB's jurisdiction."

We do not read Justice O'Connor's opinion so broadly, however. The only issue before the Justice was the propriety of the Ninth Circuit's order enjoining the merger pending the outcome of arbitration. In that posture, the case warranted her expedited attention only because of the disruptive effect of the injunction; her opinion focuses accordingly on the nature and consequences of the emergency relief that the unions sought. For example, the opinion notes, quoting Judge Rubin in *Texas Int'l Airlines*, 717 F.2d at 161, 164, that even a status quo injunction "would necessarily have the effect, at least during the period of the injunction, of deciding the representational issue," and that Congress intended the NMB "alone to consider the post-merger problems that arise from existing collective bargaining agreements." 480 U.S. at

1306, 107 S.Ct. at 1517. Although the opinion comments favorably upon the decision of the district court in the case now before us, that decision had given no hint of a damage claim lurking behind the injunction then of immediate concern, and Justice O'Connor's opinion therefore understandably describes AFA's complaint only as one "seeking an order compelling Western to submit to arbitration ... and enjoining the merger pending completion of [arbitral] proceedings." *Id.* at 1306–07, 107 S.Ct. at 1518. It is thus plain enough that Justice O'Connor was addressing only the issue directly before her, and had no occasion to consider, much less to rule upon, the question whether a claim for damages might survive a merger after her order staying the injunction.

As this case currently stands, it simply does not raise the concerns set forth in Justice O'Connor's opinion. AFA's claims for injunctive relief are now moot, and no resolution of the remaining damage claim could have any effect upon either the Delta–Western merger or the representation of Delta's employees. This dispute is over a sum of money: Delta has it, and AFA wants it; no other person, and no transaction, is affected by which of them ends up with it.

We do not see here a jurisdictional dispute within § 2, *Ninth* of the RLA. Neither the certification (or decertification) of a representative, nor the functional equivalent thereof, nor anything even remotely akin thereto, is at stake. Thus, we turn to the only other issue that Delta seeks to interpose between AFA and its demand to arbitrate its damage claim, *viz.*, whether, even in the absence of a jurisdictional dispute, § 2, *Ninth* by implication bars arbitration of any dispute that raises a "representation issue." We now turn to that question.

### B.  *Representation issues*

■ Delta's argument proceeds from the premise that "[w]hen a representation issue is shown to exist in the course of other legal proceedings, the court immediately must dismiss the legal action and require

the parties to proceed, if at all, before the NMB." From that Delta reasons that because AFA's complaint raises "issues" of representation, neither the district court nor an arbitrator may hear it; even if it does not raise a true "jurisdictional dispute," that is, "Dismissal is required even if the union's complaint arguably raises issues of contract interpretation intertwined with the representation dispute." As we understand this argument, it encompasses two alternative legal theories. The first is that any case raising an "issue" of representation, no matter what form of relief it seeks, can be resolved only by the NMB. The second is that, if the NMB lacks jurisdiction to entertain a claim in which a representation issue is raised, then there is simply no remedy available because the RLA bars any other tribunal from deciding the representational issue.

Delta's first theory is premised, as an initial matter, upon AFA's complaint raising an issue of representation. According to Delta: (1) For AFA to prevail on its claim for damages, the arbitrator would have to find that the successorship clause conferred some right upon AFA, and that (2) had that right been honored, AFA would still be representing the Western flight attendants. Thus, (3) the arbitrator, in order to uphold AFA's claim, would have to resolve an issue of representation—which, as we have seen, Delta claims may be decided only by the NMB.

Assuming *arguendo* that AFA's claim, although not a jurisdictional dispute, raises an issue of representation, we do not find Delta's argument persuasive. First, Delta does not maintain that NMB, under § 2, *Ninth,* can award damages for breach of a CBA or otherwise; as the Supreme Court made clear in *Switchmen's Union,* the powers granted to the NMB under that section are quite narrow. 320 U.S. at 304, 64 S.Ct. at 98–99. In effect, then, Delta urges upon us, or so it seems, the anomalous result that the NMB has exclusive jurisdiction over a claim as to which it has no power to grant a remedy.

Second, we question whether (at least in the absence of a clear statutory allocation of competence) any adjudicatory tribunal can have exclusive jurisdiction over an issue, as opposed to a type of claim or a remedy. Virtually any issue may arise in a variety of different contexts. As a general rule, whether a case is within the exclusive jurisdiction of an expert tribunal depends upon the nature not of the issues that may have to be decided, but of the substantive cause of action. *See Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539, 108 S.Ct. 830, 832–33, 98 L.Ed.2d 936 (1988) (notwithstanding NLRB's exclusive jurisdiction over labor law matters, "federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies") (quoting *Connell Construction Co., Inc. v. Plumbers & Steamfitters Local Union No. 100,* 421 U.S. 616, 626, 95 S.Ct. 1830, 1836, 44 L.Ed.2d 418 (1975)); *Pan American Petroleum Corp. v. Superior Court of Delaware,* 366 U.S. 656, 662–66, 81 S.Ct. 1303, 1307–09, 6 L.Ed.2d 584 (1961) (FPC's exclusive jurisdiction does not extend to state contract action seeking recovery of overcharges merely because the action calls for a determination of the validity of rates under the Natural Gas Act); *Great Northern Ry. Co. v. Merchants Elevator Co.,* 259 U.S. 285, 290–91, 42 S.Ct. 477, 478–79, 66 L.Ed. 943 (1921) (notwithstanding ICC's exclusive jurisdiction to determine rates, "the attainment of uniformity does not require that in every case where the construction of a tariff is in dispute, there shall be a preliminary resort to the Commission."). *Cf. Pratt v. Paris Gas Light & Coke Co.,* 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458 (1897) ("Section 711 [conferring on the federal courts exclusive jurisdiction over patent disputes] does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of *'cases'* arising under those laws.") (emphases in original).

To illustrate, suppose that a newspaper published an article stating that AFA, as the certified representative of Western's employees, had by racial discrimination violated its duty of fair representation, even

though the publisher knew that in reality, AFA did not represent any Western employees. In the ensuing libel action, the issue would necessarily arise—since AFA would have to show that the published statements were false—whether AFA was or was not the employees' representative. Under Delta's first theory, the presence of the "representation issue" would mean that the NMB would have to hear the suit. In addition to being inconsistent with the limited role Congress envisioned for that tribunal, *Switchmen's Union*, 320 U.S. at 304, 64 S.Ct. at 98–99, the result is obviously absurd. To the extent Delta suggests that every case that merely entails an issue of representation must be brought before the NMB, then, that argument plainly proves too much.

In support of its argument, Delta points to the Second Circuit's decision in *Air Line Pilots*, the only case we have found in which a court specifically noted a union's claim for damages, 656 F.2d at 17, yet required dismissal of the action on the authority of *Switchmen's Union*. The case is not on point, however, because the union there was seeking a *judicial* award of damages, not an order compelling *arbitral* resolution of its money claim. As we read *Air Line Pilots*, the court did not hold, as Delta suggests, that there is a "jurisdictional dispute" within the exclusive province of the NMB wherever an "issue" of representation appears; rather, the court merely held that to the extent a damage action for breach of a CBA may fall outside the jurisdiction of the NMB, the general principle of judicial noninterference in labor disputes bars the court from itself entertaining the claim.

We may assume that Congress could grant a tribunal exclusive authority to pass upon a particular issue of federal law (though Delta has pointed to no instance in which it has done so); still, we find no evidence that Congress intended to do that here. In support of its theory, Delta does cite to statements in several cases where the courts, faced with that clearly were jurisdictional disputes within the scope of § 2, *Ninth*, described the scope of the NMB's exclusive jurisdiction somewhat ex-

pansively, that is, without distinguishing between "jurisdictional disputes" and "representation issues." *See, e.g., Texas Int'l Airlines*, 717 F.2d at 161, 162. We reiterate, however, that the relief sought in those cases was either the functional equivalent of certification by the NMB, *see id.* at 158 (union's complaint would require the court to "determin[e] who represents the hitherto covered employees after the merger"), or a judicial award of damages that appeared to be inconsistent with the background of "conciliation, mediation, and arbitration" emphasized by the Court in *M–K–T*, 320 U.S. at 332, 64 S.Ct. at 150, *see Air Line Pilots Ass'n*, 656 F.2d at 17, and with the "narrow role of the courts in enforcing the RLA," *id* at 24. In the absence of some specific indication that the legislature intended that all issues arguably related to representation must be decided by the NMB, we cannot conclude that Congress vested in a body with such limited powers exclusive jurisdiction over a potentially broad range of disputes that may only tangentially raise issues within its competence.

We turn then to Delta's second theory, that even if the NMB cannot entertain a particular claim for relief in which a representation issue has arisen, the presence of that issue precludes any other authority from passing upon it, with the result that no remedy is available anywhere. Under this theory, the statutory provision for certification exclusively by the NMB has a preclusive effect, and any clause in a CBA, such as a successorship clause, the interpretation of which would require an arbitrator to make a finding on a representation issue, would simply be unenforceable and of no effect.

Due respect for privately bargained outcomes cautions against that result, unless some important public policy would otherwise be compromised. Delta has pointed us only to the policies underlying Congress's delegation to the NMB of exclusive jurisdiction to determine who will represent employees in a post-merger setting. Although those policies do support the rule that a successorship clause cannot be spe-

cifically enforced, they simply do not require that an award of damages for breach of such a clause be barred. The most that can be said in support of Delta's position is that if a carrier were liable in damages for breach of the successorship clause in its CBA, it might forego entering into an otherwise desirable merger.

Delta has pointed us to nothing in the language, the legislative history, or even the spirit of the RLA to suggest that Congress, in vesting the NMB with exclusive jurisdiction over jurisdictional disputes, intended to remove barriers to economically efficient merger activity on the part of airline carriers. *Cf.* 49 U.S.C. § 11341(a) (exempting railroad mergers from, *inter alia,* the antitrust laws). In the absence of such an indication, we decline to hold, in the context of the threshold jurisdictional issue now before us, that a bargained-for successorship clause creates no legal rights or duties whatsoever. Whether the successorship clause in this case creates any legal obligations is, of course, a matter within the province of the arbitrator.

## IV. Conclusion

This damage action is not a jurisdictional dispute within the NMB's exclusive jurisdiction under § 2, *Ninth,* of the RLA. At most, it may raise what Delta calls a "representation issue." In light of the Supreme Court's emphasis in *M-K-T* on the background availability of arbitration for disputes not within the purview of § 2, *Ninth,* however, we do not think it is nonarbitrable merely because that issue arises, because its resolution in arbitration would not interfere, as a practical matter, with the NMB's certification function. We therefore conclude that § 2, *Ninth* of the RLA does not divest the district court of jurisdiction to order arbitration of AFA's claim for damages.

For all the foregoing reasons, the order of the district court dismissing the action is reversed, and the action is remanded for further proceedings.

*It is so ordered.*