**AMERICAN TRAIN DISPATCHERS
ASSOCIATION, et al., Plaintiffs,**

v.

**BURLINGTON NORTHERN RAILROAD
COMPANY, Defendant.**

**Civ. A. No. 91–1743.**

United States District Court,
District of Columbia.

Feb. 10, 1992.

Richard S. Edelman, Donald F. Griffin, William J. Mahoney, John O'B. Clarke, Jr., Scott D. MacDonald, Highsaw, Mahoney & Clarke, Washington, D.C., for plaintiffs.

John D. Graubert, Steptoe & Johnson, Washington, D.C., Thomas J. Knapp, Lawrence M. Stroik, Charles W. Shewmake, Burlington Northern R. Co., Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Before this Court are defendant's motions to vacate an arbitral award, for a preliminary injunction, and for leave to file an amended counterclaim. We heard the parties in open court on January 29, 1992 and have fully considered the motions, the oppositions to the motions, and the replies. We decline to grant defendant's motions to vacate the arbitral award and for a preliminary injunction. We do grant the defendant's motion for leave to file an amended counterclaim.

### I. Background

This case deals with the arcane subject of statutes governing railroad labor relations and has a somewhat complex factual history. Some introductory background therefore may be helpful. We have previously set forth a more detailed description of events in our Findings of Fact and Conclusions of Law filed October 25, 1991 (hereinafter "Findings of Fact"). This fall, plaintiff unions came to the Court seeking an injunction to prevent defendant Burlington Northern ("BN") from imposing the recommendations of Presidential Emergency Board ("PEB") 219 on several general committees of the United Transportation Union ("UTU"). In short, PEB 219 had been created in May 1990 to resolve labor disputes between several carriers and unions concerning wage-rules and health and welfare movements. On January 15, 1991, PEB 219 issued a 94–page report containing recommendations concerning wage increases and lump sum payments, health and welfare plan changes and cost-sharing, and crew consist modifications including arbitration. *See* Findings of Fact at 5. The parties failed to negotiate a resolution of the outstanding disputes, and on April 17, 1991, several unions, including UTU, began a strike against the carriers. Congress, within 24 hours of the strike, passed Public Law 102–29 to halt the strike. *Settlement of Railroad Labor–Management*

*Disputes of 1991,* Pub.L. No. 102–29, 105 Stat. 169. Public Law 102–29 made the recommendations of PEB 219 binding on the parties, subject only to the limited review by a Special Board appointed by the President. Findings of Fact at 5–6.

The heart of the dispute between BN and UTU was that the UTU claimed that the recommendations of PEB 219 only applied to some of its represented employees, whereas BN argued that they applied to all UTU-represented employees. UTU is made up of 11 general committees that are based on their affiliation with a predecessor railroad or a particular geographic territory on BN. The UTU contends that several of these committees—the Northern Lines committees—did not participate in the disputes that were before PEB 219 and consequently the mandated settlement of Pub.L. 102–29 is not applicable to them. BN, on the other hand, claims that there is only one representative for all of the UTU members and has refused to deal with the four Northern Lines committees in a piecemeal fashion.

In our earlier response, this Court held that we did not have the subject matter jurisdiction to decide this issue. *See* Findings of Fact at 14. We based this holding on three alternative grounds: a) that Congress in providing that the Special Board should clarify or interpret the recommendations of PEB 219, deprived the courts of jurisdiction; b) that the dispute is a minor dispute over the meaning and reach of Pub.L. 102–29 and is subject to the compulsory arbitration procedures provided by the Railway Labor Act, 45 U.S.C. § 153; or c) that the dispute is a representation dispute that is subject to the exclusive jurisdiction

of the National Mediation Board ("NMB"). *See* Findings of Fact at 12–14.

The parties have now returned to this Court to argue a somewhat related issue. After this Court issued its opinion in October, BN began taking the steps prescribed by PEB 219 to negotiate a crew consist agreement with UTU.[1] UTU refused to negotiate with BN, and BN then invoked the procedures to arbitrate the terms of its crew consist procedures as suggested by PEB 219. On November 21, 1991, the NMB appointed three arbitrators to Arbitration Panel No. 6 to resolve the issue.[2] UTU argued that the panel was without jurisdiction over the issue because the Northern Lines committees were never a part of the PEB 219 process and thus were not involved in the Pub.L. 102–29 mandated solution to the labor disputes. BN, on the other hand, argued that the arbitral panel only had jurisdiction to determine the meaning of terms of the crew consist agreement and that it could not determine the jurisdictional issue. *See* BN's Brief in Support of Motion at 6–7.

On January 11, 1992, Arbitration Panel No. 6 decided it did not have jurisdiction under the provisions of Pub.L. 102–29 and PEB 219 to consider the merits of the crew consist question presented. The panel found that while in 1988 both parties served Section 6 notices seeking wage and rules changes for collective bargaining agreements applicable to the Southern Lines, neither party filed Section 6 notices relating to wage and rules changes on the Northern Lines. *Burlington Northern Railroad Co. v. United Transportation Union* (Jan. 11, 1991) (Zumas, Marx, and

---

1. On October 25, 1991, BN and UTU signed a crew consist agreement that BN asserts extends to all of BN's system. UTU argues that it only extends to the general committees that negotiated and ratified the agreement. According to BN, UTU has refused to negotiate this disagreement over the reach of the October 25, 1991 crew consist agreement. *See* Brief in Support of BN's Emergency Motion to Vacate Arbitration Award and to Enjoin UTU from Presenting the Representation Dispute in Further Arbitral Proceedings ("BN's Brief in Support of Motion") at 5 n. 3.

2. Arbitration Panel No. 6 in its decision states that "[t]his is an arbitration proceeding pursuant to the provisions of Public Law No. 102–29 and Presidential Emergency Board No. 219" between BN and UTU "concerning crew consist issues." The panel further stated that it was appointed by the NMB to hear and decide the issues raised by the parties. *Burlington Northern Railroad Co. v. United Transportation Union* (Jan. 11, 1991) (Zumas, Marx, and Zusman Arbs.) at 1, *available in* BN's Brief in Support of Motion App. A (hereinafter "Arbitration Panel Decision").

Zusman Arbs.) at 2–3, *available in* BN's Brief in Support of Motion App. A (hereinafter "Arbitration Panel Decision"). The panel noted that James Dagnon, BN's Senior Vice President for Human Resources, wrote a note which indicated that the Northern Lines committees were not included in national handling for these issues because they did not file Section 6 notices. Further, the panel quoted the section of the PEB report which indicated that crew consist was traditionally negotiated locally and was not appropriately before the Presidential Emergency Board.[3] *See* Arbitration Panel Decision at 4. The arbitral panel concluded:

> It has not been shown that the Northern Lines agreements, as to crew consist matters, were part of the national handling so as to constitute the subject matter jurisdiction of PEB 219 during all relevant times.

> It was essential, as a condition precedent, for appropriate Section 6 notices to have been served and the requisite powers of attorney to have been executed in order for this matter to come under the jurisdiction of PEB 219. The letter by BN Vice President Dagnon ... conclusively demonstrates that BN and the Northern Lines General Committees of Adjustment intended to avoid national handling.

BN argues that this Panel has neither the authority to rule on representation issues within the NMB's exclusive jurisdiction nor the power to relitigate the Federal District Court's ruling that the issue raised by UTU was a representation issue. BN's argument is misplaced; the Panel is neither usurping NMB's jurisdiction nor is it relitigating the District Court's ruling. The Panel merely found that the absence of appropriate Section 6 notices deprived PEB 219 of any national handling jurisdiction. The consequence of this is to make unavailable the arbitra-

tion process enacted into law by Public Law No. 102–29.[4]

Arbitration Panel Decision at 10–11.

BN now moves the Court to vacate this decision of the arbitral panel. BN argues that the award should be vacated because: (1) the arbitration panel failed to follow this Court's opinion of October 25, 1991; (2) the panel acted outside its jurisdiction by deciding a representation dispute that is within the exclusive jurisdiction of the NMB; (3) the arbitral award is contrary to the clearly enunciated public policy that representation disputes be decided only by the NMB; and (4) the award does not draw its essence from the PEB 219 crew consist procedures. In response, UTU argues that this Court may not have jurisdiction to vacate the panel decision, and that there is no basis to vacate the award. For the reasons that follow, we find all of BN's contentions without merit and deny its motion to vacate.

## II. Jurisdiction

■ It is well established that courts have extremely limited jurisdiction to review the findings of an arbitration arising out of a collective bargaining agreement. *See United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987); *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 401–02, 58 L.Ed.2d 354 (1978) (limited jurisdiction over decisions of Adjustment Board); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). This philosophy of abstention is grounded in the theory that labor disputes should be settled privately without governmental interference. 484 U.S. at 37, 108 S.Ct. at 370. Where the parties have consented to arbitration as a way of resolving grievances, a court should be extremely reluctant to disturb the findings of an arbitrator.

---

**3.** The PEB 219 report did make recommendations as to how crew consist should be handled.

**4.** The panel also found that BN had intentionally waived jurisdictional access to PEB 219 by

avoiding national handling as to wage-rule issues. "BN cannot, *ex post facto,* resurrect such waived jurisdiction." Arbitration Panel Decision at 11.

[T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Id.* at 38, 108 S.Ct. at 371. While the arbitration panel at issue here differs from the typical arbitration arising out of a mutually negotiated collective bargaining agreement—it was created by a statutorily-imposed agreement, for one, and the question of whether the parties consented to arbitration is central to the issue at bar— the principles of review are similar. Unless the panel exceeded the scope of its authority, we will view with deference the conclusions it reached.

■ However limited our jurisdiction is, we have power to determine if the arbitral panel was precluded from its action by our decision of October 25, 1991. The union argues that Pub.L. 102–29 does not give this Court jurisdiction to review the actions of the arbitration panel. *See* Memorandum of Points and Authorities of Plaintiff UTU in Opposition to Defendants Emergency Motion to Vacate Arbitration Award and For Injunction Against UTU at 2–7. But courts have the right of plenary review when asked to determine the preclusive effects of a federal judgment on relitigation of the same issues in an arbitral forum. If we have finally decided something as a matter of law, an arbitral panel may not completely disregard that conclusion. *See, e.g., Telephone Workers Union v. New Jersey Bell Telephone Co.*, 584 F.2d 31, 33 (3d Cir.1978) ("When a federal court is presented with the contention that a prior federal judgment determined issues now sought to be relitigated in an arbitral forum it must first determine the effect of the judgment.");[5] *John Morrell & Co. v.*

*Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544 (8th Cir. 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991) (*res judicata* precluded arbitrator from deciding whether union violated no-strike provision as jury had already decided the issue). Therefore, we now turn to whether the panel was precluded by our decision.

III. Issue Preclusion

■ We hold that the arbitral panel's action was not precluded by our decision of October 25, 1991. In that decision, we found that the issue presented involved a representation dispute over which we had no jurisdiction. Rather, exclusive jurisdiction rested with the NMB. Arbitration Panel No. 6 did not violate our finding of lack of jurisdiction, in also finding, but for different reasons, that it did not have jurisdiction of these issues.

■ Issue preclusion bars relitigation if the same issue was involved in both actions. The principle is applicable when the issue was actually litigated in the first action after a full and fair opportunity for litigation; the issue was actually decided in the first action on the merits; the disposition was sufficiently final; and resolution of the issues was necessary in the first action. *See National Post Office Mail Handlers v. American Postal Workers Union*, 907 F.2d 190, 192 (D.C.Cir.1990); 18 Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and Procedure* § 4416 (1981). It is clear that the same issues were involved in both actions before us: the immediate question of whether the Northern Lines and BN were involved in the disputes that became part of the PEB 219 recommendations and were thus bound by Pub.L. 102–29, and the larger question of whether it matters that some of the general committees were not involved in the disputes or whether Pub.L. 102–29

**5.** In *Telephone Workers,* the Third Circuit affirmed the district court's determination that the decision of an arbitral panel was collaterally estopped by the court's prior interpretation of a consent decree.

binds *all* UTU committees.[6] This Court held that it was a representation dispute, within the exclusive jurisdiction of the NMB and outside our subject matter jurisdiction. Although the question was litigated and the parties were given a "full and fair opportunity" to so litigate, we never decided the merits of whether all of the UTU committees and BN were before PEB 219. Also, in finding that this was a representation dispute, we did not have to reach, and did not reach, the question of whether BN and the Northern Lines committees were before PEB 219 for crew consist issues.[7] Therefore, the issue is *not* precluded by our decision.

## IV. Other Arguments

BN further argues that the arbitral panel acted outside its jurisdiction, and in contravention of public policy, by deciding a representation dispute that is within the exclusive jurisdiction of the NMB. It also argues that the panel's decision does not "draw its essence" from the crew consist recommendations of the PEB 219 panel.

 We fail to understand BN's reasoning that the panel, in deciding that it did not have jurisdiction, acted outside its jurisdiction. Nor do we see how in deciding it could not hear the case, it decided a representation dispute. Indeed, exactly the converse is true: if the arbitral panel had reached a decision on the merits, it would have essentially reached a conclusion that

6. BN frames the issue as "whether BN is prevented from implementing the recommendations of PEB 219 on all UTU-represented employees because the so-called northern lines committees did not serve the UTU's national Section 6 notices". BN's Brief in Support of Motion at 9–10.

7. *See also GAF Corp. v. U.S.,* 818 F.2d 901, 912 (D.C.Cir.1987) ("It is ordinarily the case that a judgment dismissing an action for lack of jurisdiction will have no preclusive effect on the cause of action originally raised. Rule 41 of the Federal Rules of Civil Procedure expressly provides that a dismissal for lack of jurisdiction will not 'operat[e] as an adjudication on the merits.' The judgment ordering dismissal, will, however, have preclusive effect as to matters actually adjudicated; it will, for example, preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal.")

all of the UTU members were before PEB 219 even though Section 6 notices were not served on or by all of the general committees. The panel therefore would have decided a representation dispute. But in holding that it was without jurisdiction, the panel avoided interfering with the exclusive jurisdiction of the NMB.

 We also decline to vacate the arbitral awards on public policy grounds. In order for a court to reverse an arbitration decision for this reason, the policy "must be well defined and dominant," *W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183–84, 76 L.Ed.2d 298 (1983); *American Postal Workers v. United States Postal Service,* 789 F.2d 1 (D.C.Cir.1986). This basis for reversing an arbitration is an "extremely narrow" exception to the general deference accorded arbitration awards. 789 F.2d at 8. Although there is a public policy, enunciated in statute and law, that representation disputes are within the exclusive jurisdiction of the NMB, as noted above, the actions of the arbitral panel in this case did not undermine that jurisdiction. The argument that the arbitration panel exceeded its jurisdiction by declining to hear these parties, somehow interfering with the exclusive jurisdiction of the NMB, overstates the case.[8]

8. The District of Columbia Circuit has explicitly denounced an approach to NMB jurisdiction that would require the abnegation of jurisdiction whenever a representation issue arose. In *Association of Flight Attendants v. Delta Air Lines, Inc.,* 879 F.2d 906 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990), the Court of Appeals held that the district court was not precluded from compelling arbitration of damages for breach of a collective bargaining agreement merely because the successor clause involved a representation issue. "As a general rule, whether a case is within the exclusive jurisdiction of an expert tribunal depends upon the nature not of the issues that may have to be decided, but of the substantive cause of action." 879 F.2d at 915. The Court continued, "[t]o the extent Delta suggests that *every* case that merely entails an issue of representation must be brought before the NMB, then, that argument plainly proves too

■ Similarly, we decline to vacate the arbitral award based on the theory that it does not draw its essence from the collective bargaining agreement. Arbitrators are not free to "dispense [their] own brand of industrial justice," *see United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), yet they are also not free to construe agreements for groups which are not party to those agreements. Essentially, Arbitration Panel No. 6 found that BN and the UTU were not parties to the contract imposed by Pub.L. 102–29 on crew consist issues. Although it is possible to conceive of a theory that would rely on the arbitral panel's having decided the representation dispute, we do not vacate the panel's decision on that theoretical ground. Indeed, where two interpretations of arbitrators' decisions are possible, one within their clear discretion, and one that could be predicated on another theory, the Supreme Court has indicated that the proper approach is to credit the arbitrators' exercise of discretion.[9] *See United Steelworkers*, 363 U.S. at 598, 80 S.Ct. at 1361 ("We see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration").

## V. Injunctive Relief

■ BN seeks injunctive relief to prevent UTU from raising the jurisdictional issues before other arbitral panels.[10] We decline to grant such injunctive relief. Equitable relief requires that the plaintiff make a showing of substantial likelihood of success on the merits; that plaintiff will suffer irreparable injury; that the balance of equities favors the grant of relief; and that public interest either favors or does not weigh against granting the requested relief. *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977); *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921 (D.C.Cir.1958); *Perry v. Perry*, 190 F.2d 601 (D.C.Cir.1951). As we have found that the arbitral panel was within its power to determine its own jurisdiction, there is no rationale to prevent UTU from continuing to argue this point with other panels. It is clear that BN can not demonstrate a substantial likelihood of success on the merits, and hence an injunction will not lie. Further, BN claims that the result of not enjoining UTU from future action will be that BN will have different crew consist arrangements on different parts of its line, demoralizing employees. *See* BN's Brief in Support of Motion at 21–22. We point out that as PEB 219 noted, crew consist is traditionally negotiated locally; hence, traditionally, different arrangements applied.

## V. Conclusion

This issue should be finally decided by the National Mediation Board. It is a travesty of labor law that with all these boards, panels, and statutorily-created processes for the resolution of labor disputes, BN and UTU have been unable to receive a final determination on whether BN needs to negotiate with each and every general

much." 879 F.2d at 916. BN's argument that the arbitral panel violated the exclusive jurisdiction of the NMB by declining to hear the case is inconsistent with the law in this Circuit. Although the arbitral panel could not decide a representation dispute without interfering with the NMB's exclusive jurisdiction, it can consider issues which may, in some form, intersect with the representation dispute.

9. Additionally, even if the arbitral panel could have viewed the issue as a "minor dispute" over the terms of a contract, the NMB would still have exclusive jurisdiction if it involved a representation dispute. *See, e.g., Southern Railway Co. v. American Train Dispatchers Assoc.*, 948 F.2d 887, 891 (4th Cir.1991); *Flight Engineers' International Assoc. v. Pan American World Airways, Inc.*, 896 F.2d 672, 673 (2d Cir.), *cert. denied*, 495 U.S. 953, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990); *Independent Union of Flight Attendants v. Pan American World Airways, Inc.*, 664 F.Supp. 156, 158 (S.D.N.Y.1987), *aff'd*, 836 F.2d 130, 131 (2d Cir.1988).

10. These cases can go both ways on the issue of a panel's jurisdiction. For example, Arbitration Panel No. 5 found that UTU's claim of lack of proper Section 6 notices was found to be without merit and the panel's jurisdiction to decide the merits was affirmed. *See* Arbitration Panel Decision at 10.

committee or whether the carrier can negotiate with UTU as a single entity. As we noted in our October 25, 1991 Opinion, we do not have the jurisdiction to decide what is essentially a representation dispute, and for that matter, neither does Arbitration Panel No. 6, a fact that it recognized. However, this representation dispute should be resolved, and it should be resolved promptly. The parties should submit this post haste to the NMB, and the NMB should promptly act upon the request.

For the reasons given above, we deny the defendant's motions for injunctive relief and to vacate the award of the arbitral panel. We grant defendant's motion to amend the counterclaim.