**ASSOCIATION OF FLIGHT ATTENDANTS, AFL–CIO, Plaintiff,**

v.

**USAIR, INC., Defendant.**

**Civ. A. No. 92–2166–LFO.**

United States District Court, District of Columbia.

Nov. 30, 1992.

Thomas E. Reinert, Jr., Sheldon M. Kline, Morgan, Lewis & Bockius, Washington, DC, Betty Leach Hawkins, USAir, Inc., Arlington, VA, for defendant USAir, Inc.

Edward J. Gilmartin, Nancy E. Segal, Association of Flight Attendants, AFL–CIO, Washington, DC, for plaintiff Ass'n of Flight Attendants, AFL–CIO.

## MEMORANDUM

OBERDORFER, District Judge.

This is an action brought under the Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq.*, arising from an agreement under which defendant, USAir, Inc., took over the management of Shuttle, Inc., the former Trump Shuttle. Effective August 10, 1992, plaintiff, the Association of Flight Attendants, AFL–CIO (AFA), became the certified representative of the flight attendants employed by Shuttle pursuant to a ruling of the National Mediation Board (NMB) that declared USAir and Shuttle a single carrier for representation purposes. Since that date, USAir has applied to Shuttle flight attendants the terms of the bargaining agreement between Shuttle and the Transport Workers Union (TWU), the Shuttle flight attendants' previous representative, rather than the terms of the agreement between AFA and USAir. Plaintiff argues that defendant is now obligated to apply the AFA–USAir bargaining agreement to Shuttle flight attendants. Extending the AFA–USAir agreement to Shuttle as well as USAir flight attendants would have two basic effects on the employees represented by AFA. First, the terms and conditions of the AFA bargaining agreement, which are generally superior to those of the TWU agreement, would extend to Shuttle flight attendants. And second, the seniority lists of USAir and Shuttle flight attendants would be integrated.

Plaintiff's principal claim is that defendant's application of the TWU bargaining agreement to Shuttle flight attendants, in light of the NMB's decision, violates the "major dispute" status quo and collective bargaining requirements found in §§ 2 First, 2 Seventh, 5, and 6 of the RLA, 45 U.S.C. §§ 152 First, 152 Seventh, 155 & 156. In addition, plaintiff contends that defendant's action violates its duty under § 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth, to "treat with" the representative of the craft or class as certified by the NMB. Finally, plaintiff claims that defendant's

conduct undermines and subverts plaintiff's status as the bargaining representative of USAir/Shuttle flight attendants in violation of §§ 2 First, 2 Third, and 2 Fourth of the RLA, 45 U.S.C. §§ 152 First, Third & Fourth.

Plaintiff has filed a motion for a preliminary injunction. At a hearing on that motion held on October 26, 1992, the parties agreed that the hearing should be consolidated with a hearing on the merits, and it was ordered that the parties' filings be treated as cross-motions for summary judgment. *See* Fed.R.Civ.P. 65(a)(2).

### FINDINGS OF FACT

Plaintiff, an unincorporated labor organization, is the duly authorized, certified, and exclusive representative under the RLA of the approximately 9,000 flight attendants employed by USAir. Defendant is an air carrier engaged in interstate and foreign commerce pursuant to certificates of public convenience and necessity issued under the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 *et seq.*

AFA and USAir have been parties to successive collective bargaining agreements covering the rates of pay, rules, and working conditions of USAir's flight attendants. The current collective bargaining agreement has been effective since September 1, 1988, with an amendable date of August 31, 1989. Since November 1989, AFA and USAir have been engaged in collective bargaining negotiations for a new bargaining agreement pursuant to § 6 of the RLA, 45 U.S.C. § 156. The parties have been in mediation under the supervision of the NMB since July 31, 1990.

USAir presently manages the airline operation of Shuttle, Inc., formerly known as the Trump Shuttle, pursuant to a management agreement. The management agreement between USAir and Shuttle became effective April 10, 1992, and has a duration of up to 10 years. Under the agreement, USAir manages essentially all operations of Shuttle, which does business as "USAir Shuttle," with the exception of certain activities regulated by the Federal Aviation Administration such as dispatch. USAir has no present equity interest in Shuttle, but it does have an option to purchase Shuttle effective October 10, 1996. Shuttle was incorporated on April 10, 1992 and, through a corporate merger with Trump Shuttle, Inc., assumed the assets and operations of Trump Shuttle. Trump Shuttle had been organized in 1989 from the assets and operations of the Eastern Airlines Shuttle. The employees of Shuttle, with the exception of some new hires, are the former Eastern employees who accepted employment with Trump Shuttle. The approximately 240 flight attendants employed by Shuttle are not employees of USAir. USAir is, however, responsible for labor relations with those employees under the management agreement.

The flight attendants of Eastern Airlines were represented by TWU, and Trump Shuttle recognized TWU as the flight attendants' representative when it commenced operation. Trump Shuttle applied the rates of pay, rules, and working conditions of the Eastern–TWU bargaining agreement to its flight attendants. Upon assuming management of Shuttle on April 10, 1992, USAir continued to deal with TWU as the representative of Shuttle flight attendants. Since that time, USAir has continued to apply the rates of pay, rules, and working conditions of the Eastern–TWU collective bargaining agreement to the Shuttle flight attendants.

On April 2, 1992, USAir petitioned the NMB to determine the effect of the USAir–Shuttle management agreement on union representation. USAir's position before the Board was that USAir and Shuttle, although separate corporations, should be considered a "single transportation system" for purposes of representation under the RLA. On August 10, 1992, the NMB issued its decision finding USAir and Shuttle a "single transportation system" for purposes of representation. The Board terminated TWU's right to represent Shuttle flight attendants and certified AFA as the single representative of Shuttle and USAir flight attendants. Since August 10, 1992, USAir has dealt exclusively with AFA as

the representative of Shuttle flight attendants.

In November 1991, when USAir was considering entering an agreement to manage Shuttle, representatives of USAir met and discussed the transaction with representatives of AFA and TWU. USAir's representatives stated to the unions' representatives that USAir would not integrate the USAir and Shuttle flight attendants during the term of the management agreement, and that applying the more costly terms of the AFA–USAir agreement to Shuttle flight attendants would be a "deal breaker." USAir also explained that the separation of flight attendants was insisted upon by the consortium of banks which owned the Shuttle assets, because the consortium wanted to be able to sell the Shuttle operation to another carrier without an interruption in service in the event that USAir did not exercise its purchase option. USAir communicated to AFA that it wanted to enter into a "fence" agreement to ensure a segregation of USAir and Shuttle flight attendants. In response to USAir's position, AFA advised that it supported the proposed management agreement and did not object to a fence agreement separating USAir and Shuttle flight attendants.

In December 1991, USAir entered into the management agreement with Shuttle. In January 1992, representatives of AFA and USAir again met and discussed labor relations aspects of the transaction. At that time, AFA informed USAir that in its view the parties would have to execute a written fence agreement in order to segregate USAir and Shuttle flight attendants and keep them under separate bargaining agreements. In a letter filed with the NMB in May 1992 in support of USAir's request for single carrier status, AFA stated its position that USAir and Shuttle flight attendants would be employed under the terms of the AFA–USAir bargaining agreement if the parties failed to negotiate a fence agreement.

In February 1992, USAir entered into a fence agreement with the representative of USAir and Shuttle pilots, the Air Line Pilots Association (ALPA). In March 1992, USAir and TWU, as representative of the Shuttle flight attendants, agreed to the fencing of Shuttle flight attendants during the term of the USAir–Shuttle management agreement.

USAir began negotiating with AFA, as representative of the USAir flight attendants, for a written fence agreement in June 1992. The parties have failed to execute a written fence agreement. USAir proposed a simple separation of USAir and Shuttle flight attendants and a retention of each group under its previous bargaining agreement. AFA rejected USAir's proposal, declaring it inadequate and seeking to add conditions involving retirement terms, paid release time for union representatives, and the conclusion of a new, comprehensive agreement for USAir flight attendants.

There is presently no integrated seniority list for USAir and Shuttle flight attendants, and AFA has not initiated its internal seniority integration procedures for the two flight attendant groups. In the Summer 1992 issue of a newsletter published by AFA's Master Executive Council (MEC), AFA informed its members that there would not be an integration of the USAir and Shuttle flight attendant seniority lists unless and until USAir purchased Shuttle. This information was contained in an article written by MEC Secretary–Treasurer Glen Plotkin, which further stated:

[I]t is likely the Company will buy the Shuttle. Only upon the date of such a purchase would Trump flight attendants begin working under our contract as USAir flight attendants; only then would they be integrated into our seniority list.

The prior practice of these and other parties reveals instances in merger or buyout situations in which a previous collective bargaining agreement has been applied as the status quo despite a change in employer or bargaining representative. When the present Shuttle flight attendants left Eastern Airlines in 1989 to work for the newly formed Trump Shuttle, they carried with them the Eastern–TWU agreement, which Trump Shuttle recognized as the status quo. When Trump Shuttle was merged into Shuttle in April 1992, the Eastern–

TWU agreement again continued to apply as the status quo.

Prior to the 1988 merger of USAir and Pacific Southwest Airlines (PSA), the PSA flight attendants were represented by the International Brotherhood of Teamsters (IBT). In anticipation of the merger, the PSA flight attendants' representative was formally changed to AFA. Upon that change of representative, PSA—and then after the merger, USAir—continued to apply the PSA–IBT collective bargaining agreement to the PSA flight attendants as the status quo pending negotiation of an integrated agreement. In a letter to AFA, USAir wrote that such a continuation of the previous bargaining agreement after a merger "is consistent with the status quo requirements of the Railway Labor Act."

## CONCLUSIONS OF LAW

The four requirements for preliminary injunctive relief are: (1) that plaintiff is likely to succeed on the merits; (2) that plaintiff will suffer irreparable harm if the injunction is not granted; (3) that other parties will not be substantially harmed by the injunction; and (4) that granting the injunction will serve the public interest. *O'Donnell Construction Co. v. District of Columbia*, 963 F.2d 420, 428 (D.C.Cir. 1992). Because the plaintiff is unlikely to succeed on the merits, the motion for a preliminary injunction will be denied. In addition, because there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law, summary judgment will be entered in favor of defendant. Fed.R.Civ.P. 56(c).

Although the parties spend considerable energy debating the background of the parties' negotiations and agreements, this case essentially comes down to a single legal question: Does a change in bargaining representative effected by the NMB's "single carrier" determination automatically trigger application of the new representative's collective bargaining agreement? Plaintiff argues that it does, and that therefore defendant's continued application of the TWU agreement violates the "status quo"—more precisely, what became the status quo with the NMB's decision on August 10, 1992.

At the outset, a distinction must be made between "major" and "minor" disputes under the RLA. Major disputes are disputes involving attempts to change or alter collective bargaining agreements, while minor disputes involve disagreements over the application or interpretation of collective bargaining agreements. *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945). This Court has jurisdiction to entertain plaintiff's claim only if it involves a major dispute; minor disputes are resolved through mandatory, final, and binding arbitration. *See id.;* 45 U.S.C. § 184; *Transport Workers Union v. Eastern Air Lines, Inc.*, 544 F.Supp. 1315, 1319–20 (E.D.N.Y.), *aff'd as modified*, 695 F.2d 668, 673–74 (2d Cir.1982). The present dispute is not easily classified as major or minor. It does not involve the interpretation of a collective bargaining agreement; on the other hand, it does not concern the formation of a collective bargaining agreement. The real dispute is which collective bargaining agreement—the AFA or the TWU agreement—applies to Shuttle flight attendants. Because plaintiff alleges that defendant's application of the TWU agreement is effectively an alteration of the AFA agreement (which, according to AFA, must apply to Shuttle flight attendants as a matter of law), defendant agrees that this action should be treated as a major dispute, and the Court will treat it as such.

The RLA establishes a "purposely long and drawn out" collective bargaining process for altering bargaining agreements. *Brotherhood of Railway Clerks v. Florida E. Coast R.R. Co.*, 384 U.S. 238, 246, 86 S.Ct. 1420, 1424, 16 L.Ed.2d 501 (1966). Under the Act, status quo working conditions must be maintained throughout the major dispute settlement process. *See* 45 U.S.C. §§ 152 Seventh & 156; *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 150–53, 90 S.Ct. 294, 299–301, 24 L.Ed.2d 325 (1969). Plaintiff argues that the NMB's August 10, 1992 decision that USAir/Shuttle consti-

tutes a "single transportation system" made AFA's collective bargaining agreement the "status quo" for Shuttle flight attendants.

■ In itself, the NMB decision does not have the legal effect which might sustain plaintiff's claim. The NMB's jurisdiction is limited to resolving issues of representation, and does not extend to resolving major disputes or determining the validity of labor contracts. *Chicago & N.W. Ry. Co. v. United Transp. Union,* 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971); *International Bhd. of Teamsters v. Texas Int'l Airlines, Inc.,* 717 F.2d 157, 159 (5th Cir. 1983). Therefore, the NMB's August 10 ruling decided only that AFA is the representative of Shuttle flight attendants and that TWU is no longer their representative; it did not decide that AFA's bargaining agreement with USAir automatically covered Shuttle flight attendants.

■ Moreover, the AFA–USAir collective bargaining agreement does not extend to Shuttle employees by its own terms. The agreement does not contain a clause explicitly defining its scope. The agreement's definition of "flight attendants" refers to "employees," and the "Recognition" clause designates AFA as the representative of "the flight attendants in the employ of the Company." AFA–USAir CBA §§ 2(A); 1. In fact, Shuttle flight attendants are literally employed not by USAir, but by Shuttle, Inc. The AFA agreement thus does not apply to Shuttle flight attendants by its own terms. In any event, to the extent that AFA's claim is that the AFA–USAir agreement itself applies to the Shuttle flight attendants, the dispute is properly characterized as a minor dispute and is therefore outside the jurisdiction of the federal courts. *Consolidated Rail Corp. v. Railway Labor Executives Ass'n,* 491 U.S. 299, 304, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989). Moreover, AFA has not filed a grievance before the System Board of Adjustment as provided for under the AFA–USAir agreement and 45 U.S.C. § 184.[1]

The crux of this dispute, then, is whether the AFA–USAir bargaining agreement became applicable to Shuttle flight attendants by operation of federal labor law in conjunction with the NMB decision. The law does not support plaintiff's theory.

■ First, it is a general principle that a change in representation does not change existing contractual rights and obligations. *See Air Transp. Employees v. Western Airlines,* 105 L.R.R.M. 3004, 3008 (C.D.Cal 1980); *accord International Ass'n of Machinists v. Northwest Airlines, Inc.,* 843 F.2d 1119 (8th Cir.1988), *vacated as moot,* 854 F.2d 1088 (8th Cir.1988); *Order of Ry. Conductors & Brakemen v. Switchmen's Union of North America,* 269 F.2d 726 (5th Cir.), *cert. denied,* 361 U.S. 899, 80 S.Ct. 206, 4 L.Ed.2d 159 (1959); *Merger Procedures,* 14 NMB 388, 395 (1987); *Delta–Western,* 14 NMB 291, 391 (1987). In deciding an analogous dispute, the court in *Air Transport Employees v. Western Airlines* quoted from two annual reports of the NMB explaining the Board's position on the issue. In 1935, the Board wrote:

When there is an agreement in effect between a carrier and its employees signed by one set of representatives and the employees choose new representatives who are certified by the Board, the Board has taken the position that a change in representation does not alter or cancel any existing agreement made in behalf of the employees by their previous representatives. The only effect of a certification by the Board is that the

---

1. Section 184 provides in relevant part:

The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjust-ment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board....

It shall be the duty of every carrier and of its employees, acting through their representatives, ... to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised....

45 U.S.C. § 184.

employees have chosen other agents to represent them in dealing with the management under the existing agreement. *First Annual Report of the National Mediation Board* at 23–24 (1935). In 1976, the Board added the following explanatory language:

> The purpose of such a policy is to emphasize a principle of the Railway Labor Act that agreements are between the employees and the carrier, and that the change of an employee representative does not automatically change the contents of an agreement. The procedures of Section 6 of the Railway Labor Act are to be followed if any changes in labor agreements are desired.

*Forty-second Annual Report of the National Mediation Board* at 39 (1976). While the NMB's statements on this issue do not constitute binding precedent, they are persuasive authority.

Further, in the context of mergers, which provides perhaps the closest analogy to the situation here, both law and practice support defendant's argument that the terms of the TWU agreement survive the change in representation as the "status quo" under the RLA. When bargaining representatives have changed as a result of mergers, courts have generally applied the substantive terms of previous contracts. *See, e.g., International Ass'n of Machinists v. Northwest Airlines*, 843 F.2d at 1120–21; *Trans Int'l Airlines, Inc. v. International Bhd. of Teamsters*, 650 F.2d 949, 964–65 (9th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981); *Association of Flight Attendants v. Republic Airlines, Inc.*, 534 F.Supp. 783 (D.Minn. 1982); *International Ass'n of Machinists v. Northwest Airlines, Inc.*, 674 F.Supp. 1387, 1388 (D.Minn.1987). Thus, consistent with this principle, the Shuttle flight attendants have had their agreement, the Eastern–TWU agreement, continued as the status quo through two changes in the identity of the carrier. Similarly, prior to the PSA–USAir merger in 1988, when the PSA flight attendants changed their representative from IBT to AFA, both PSA and USAir continued to apply the PSA–IBT agreement to PSA flight attendants.

The principle of continuity of bargaining agreements also coincides with the purposes underlying the RLA. The Act reflects Congress's intent to promote stability in the transportation industry's labor-management relations in order to prevent interruptions in interstate commerce. *Burlington Northern R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 107 S.Ct. 1841, 95 L.Ed.2d 381 (1987). The RLA imposes a requirement at each stage of the mandatory negotiation process that the parties maintain the conditions of the status quo—a requirement that has been cited by the Supreme Court as "central to the design" of the Act. *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. at 150, 90 S.Ct. at 299. Thus, the Act forbids a carrier from changing "the rates of pay, rules or working conditions of its employees as a class as embodied in agreements except in the manner prescribed in such agreements or in Section 6 of this Act." 45 U.S.C. § 152 Seventh. There is an anomaly in AFA's argument that the RLA's "status quo" provision required a dramatic *change* on August 10, 1992 in the actual terms governing the employment of the Shuttle flight attendants. On that date, the only relevant change was in the Shuttle flight attendants' representative. To say that that change carried with it a new "status quo" in terms of working conditions, rates of pay, rules, and seniority would not fit neatly within the RLA's overarching purpose of promoting stability.

In support of its argument, AFA relies heavily on two cases involving airline mergers. It cites *Association of Flight Attendants v. Delta Air Lines, Inc.*, 879 F.2d 906 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990), and *International Bhd. of Teamsters v. Texas Int'l Airlines, Inc.*, 717 F.2d 157 (5th Cir. 1983), for the proposition that when a union's certification is extinguished by the NMB, its collective bargaining agreement does not survive. Both cases, however, involved mergers in which a smaller unionized group was merged into a larger *non-union* craft or class on the surviving carri-

er and the resulting employee group was unrepresented. The cases do contain language suggesting that the former bargaining agreements did not survive the mergers; the reason the agreements did not survive, however, was that the minority unionized group had lost representation. Thus, the cases stand for the proposition that without a collective bargaining representative there can be no collective bargaining agreement. From that proposition, however, it does not logically follow that a change in bargaining representative necessarily entails a change in bargaining agreement. Indeed, in *International Bhd. of Teamsters v. Texas Int'l Airlines,* Judge Rubin noted in the course of his discussion: "If the employees designate a new collective bargaining representative, it succeeds to the status of the former representative without alteration in the contract terms." 717 F.2d at 163.

The parties also discuss the course of dealings between AFA and USAir, including their failed attempt to arrive at a fence agreement. In light of the conclusion reached here as to AFA's principal argument, these background issues do not become crucial. It is sufficient to note that after January 1992 the parties expressed opposing views as to the legal obligations that would arise out of the USAir-Shuttle management agreement. However, because those obligations are ultimately determined as a matter of law, rather than by a judicial gleaning of the parties' intent, there is no need to explore the extrinsic evidence in detail.

■ The failure of AFA's "status quo" claim under the RLA leads inexorably to the failure of its other claims. First, there is no basis for the allegation that USAir has refused to "treat with" the certified representative of the flight attendants. It is undisputed that USAir has dealt exclusively with AFA as the representative of the Shuttle flight attendants since August 10, 1992. To the extent that AFA may be asking the Court to examine USAir's bargaining position concerning the Shuttle flight attendants, AFA has failed to present an issue that is appropriate or ripe for

judicial intervention. *See, e.g., Chicago & North Western Ry. Co. v. United Transp. Union,* 402 U.S. at 579 n. 11, 91 S.Ct. at 1736 n. 11; *Independent Fed'n of Flight Attendants v. Trans World Airlines, Inc.,* 682 F.Supp. 1003, 1026 (W.D.Mo.1988), *aff'd,* 878 F.2d 254 (8th Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990); *Railway Labor Executives Ass'n v. Boston & Maine Corp.,* 664 F.Supp. 605, 616 (D.Me.1987). In any event, the evidence would not support any claim of a failure on the part of USAir to bargain in good faith. USAir's position has consistently been that the Shuttle flight attendants must be kept separate from the USAir flight attendants and retained under the Eastern-TWU bargaining agreement. It is AFA that has expressed conflicting positions and has added extrinsic conditions to the proposed fence agreement. Similarly, AFA has failed to show that USAir has undermined and subverted AFA's status as bargaining representative for the flight attendants. There is no evidence that USAir's actions are "inherently destructive of union or employee activity" and have "prevented the scheme of the RLA from working." *Trans World Airlines, Inc. v. Independent Fed'n of Flight Attendants,* 489 U.S. 426, 441-42, 109 S.Ct. 1225, 1234-35, 103 L.Ed.2d 456 (1989). USAir has simply retained the status quo with respect to the Shuttle flight attendants.

Because it is clear from the undisputed facts that AFA is not entitled to the relief it seeks, the accompanying Order denies AFA's motion for a preliminary injunction and grants summary judgment in favor of USAir.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 30th day of November, 1992, hereby

ORDERED: that plaintiff's motion for a preliminary injunction should be, and is hereby, DENIED; and it is further

ORDERED: that plaintiff's motion for summary judgment should be, and is hereby, DENIED; and it is further

ORDERED: that defendant's cross-motion for summary judgment should be, and is hereby, GRANTED; and it is further

ORDERED: that this action is DISMISSED.