838 F.2d 563
 127 L.R.R.M. (BNA) 2597, 267 U.S.App.D.C. 265,
108 Lab.Cas. P 10,305
 AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,
v.
U.S. DEPARTMENT OF TRANSPORTATION, Respondent, Texas Air
Corporation, Intervenor.
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, Petitioner,
v.
U.S. DEPARTMENT OF TRANSPORTATION, Respondent, NWA, Inc.,
Intervenor.
AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,
v.
U.S. DEPARTMENT OF TRANSPORTATION, Respondent,
TWA Pilots' Master Executive Council, Association of Flight
Attendants, Intervenors.
 Nos. 86-1555, 86-1510, 86-1519, 86-1520, 86-1564 and 86-1608.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 7, 1987.
Decided Feb. 5, 1988.
 
 Gary Green and Richard Ruda, with whom R. Russell Bailey, Joseph Guerrieri, Jr. and John Edmond, Washington, D.C., were on the joint brief, for petitioners, Air Line Pilots Ass'n, Intern. and Intern. Ass'n of Machinists and Aerospace Workers, in Nos. 86-1510, 86-1519, 86-1520, 86-1555, 86-1565 and 86-1564.
 Stewart S. Manela, Washington, D.C., was on the joint brief, for petitioner, Independent Federation of Flight Attendants, in No. 86-1608.
 Deborah Greenfield, Washington, D.C., was on the joint brief, for intervenor, Ass'n of Flight Attendants, in Nos. 86-1519 and 86-1520.
 James A. McCall, Washington, D.C., was on the joint brief, for intervenor, Intern. Broth. of Teamsters, Airline Div., in No. 86-1519.
 Thomas L. Ray, Sr. Trial Atty., Dept. of Transp., with whom B. Wayne Vance, Gen. Counsel, Kenneth N. Weinstein, Deputy Asst. Gen. Counsel, and Miguel R. Rovira, Atty., Dept. of Transp., and Robert J. Wiggers, Robert B. Nicholson and Catherine G. O'Sullivan, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondent in Nos. 86-1555, 86-1565, 86-1510, 86-1519, 86-1520, 86-1564 and 86-1608. John J. Powers III and Donald S. Clark, Attys., Dept. of Justice, Washington, D.C., also entered appearances for respondent, U.S. Dept. of Transp.
 Ronald A. Stern, Thomas D. Goldberg, Washington, D.C. and Clark H. Onstad, were on the brief, for intervenor, Texas Air Corp., in Nos. 86-1555 and 86-1565.
 Ronald D. Eastman and David F. Williams, Washington, D.C., entered appearances for intervenor, NWA, Inc., in Nos. 86-1510 and 86-1519.
 Edmund E. Harvey, Washington, D.C., entered an appearance for intervenor, TWA, Inc., in Nos. 86-1520, 86-1564 and 86-1608.
 Before ROBINSON and EDWARDS, Circuit Judges, and PARKER,* Senior District Judge for the United States District Court for the District of Columbia.
 Opinion for the Court filed by Circuit Judge EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 These cases arise out of three airline acquisitions approved by the Department of Transportation ("DOT") in 1986: the acquisition of Eastern Air Lines, Inc. ("Eastern") by Texas Air Corp. ("TAC"), the parent company of Continental Air Lines; Republic Airlines, Inc. ("Republic") by NWA, Inc., the parent company of Northwest Airlines, Inc. ("Northwest"); and Ozark Airlines, Inc. ("Ozark") by Trans World Airlines, Inc. ("TWA"). Unions representing certain employees at the acquired and acquiring airlines asked DOT to impose labor protective provisions ("LPPs")[1] as a condition to approving the acquisitions. In each instance, DOT refused. Some of the unions have petitioned this court for review of DOT's approval of the acquisitions without LPPs.
 
 
 2
 Under section 408(b) of the Federal Aviation Act ("Act"), 49 U.S.C. Sec. 1378(b) (1982), DOT reviews airline acquisitions under a "public interest" standard. It may condition its approval by imposing "such terms and conditions as it shall find to be just and reasonable." Id. Prior to the passage of the Airline Deregulation Act of 1978 ("ADA"), Pub.L. No. 95-504, 92 Stat. 1705, U.S. Code Cong. & Admin. News 1978, p. 3737, the approval of airline acquisitions routinely was conditioned upon the carriers' acceptance of LPPs.[2]
 
 
 3
 LPP policy was drastically altered in response to the ADA. In National Airlines, Acquisition, 84 C.A.B. 408, 475 (1979), the CAB stated that LPPs would "no longer be imposed as a matter of course," and it "advise[d] labor to negotiate its own merger protections through the collective bargaining process at the first opportunity." Thereafter, LPPs were imposed for the next few years to allow unions an opportunity to bargain for protections. Since 1985, however, DOT has not imposed LPPs.
 
 
 4
 In Air Line Pilots Association v. Department of Transportation ("ALPA"), 791 F.2d 172 (D.C.Cir.1986), this court upheld DOT's post-ADA policies with regard to LPPs, in part because DOT had reasonably concluded that airline employees could acquire protections from the adverse effects of an acquisition through the collective bargaining process. The court implicitly deemed it immaterial that the protections secured by the unions through collective bargaining might be less favorable than administratively-imposed LPPs or that the agreement might someday be breached.[3] Rather, the court upheld the position that LPPs need not be imposed so long as a union had an opportunity to bargain for protections. See id. at 176, 178.
 
 
 5
 In the proceedings below, the unions claimed that whatever protections they had obtained through collective bargaining were inadequate. DOT properly rejected these arguments, because the unions did not allege that they had somehow been denied an opportunity to bargain for further protections. Similarly, DOT was correct in concluding that it was not required to impose LPPs simply because the unions had alleged that the carriers might breach, or had breached, existing collective bargaining agreements. Whether a carrier unlawfully breaches a collective bargaining agreement is a question that is normally left for resolution by an appropriate system board of adjustment under the Railway Labor Act. See 45 U.S.C. Sec. 184 (1982); International Ass'n of Machinists v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); Slocum v. Delaware, L. & W. R.R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950). More important, such alleged breaches are irrelevant to DOT's paramount concern--whether the unions had the opportunity to bargain for protections in the first place.
 
 
 6
 The unions maintain, however, that collective bargaining might not be available to protect the employees' interests. The unions point to several federal appellate decisions, Air Line Employees Ass'n v. Republic Airlines, 798 F.2d 967 (7th Cir.) (per curiam), cert. denied, --- U.S. ----, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986); International Bhd. of Teamsters v. Texas Int'l Airlines ("Teamsters"), 717 F.2d 157 (5th Cir.1983); Brotherhood of Ry. & S.S. Clerks v. United Air Lines, 325 F.2d 576 (6th Cir.1963), cert. dismissed, 379 U.S. 26, 85 S.Ct. 183, 13 L.Ed.2d 173 (1964), and an opinion by Circuit Justice O'Connor, Western Airlines v. International Bhd. of Teamsters, --- U.S. ----, 107 S.Ct. 1515, 94 L.Ed.2d 744 (O'Connor, Circuit Justice 1987), which suggest that, in the face of a pending or recently completed acquisition, the courts will not entertain a suit seeking to enforce a collective bargaining agreement of an acquired or acquiring carrier if there is a possibility that a representational dispute might be involved. On this point, the Fifth Circuit has held:
 
 
 7
 A carrier does not have the power unilaterally to abrogate a collective bargaining agreement. So long as the operating unit is not dramatically altered by a merger that erases the Union's majority status, the Company must adhere to its compacts. After a merger that makes the employee group hitherto represented by the Union a minority of the craft, the question of employee representation inevitably arises. When this happens, resolution of that question is the function of the National Mediation Board.
 
 
 8
 Teamsters, 717 F.2d at 164; see also Western Airlines, 107 S.Ct. at 1517 ("The great weight of the caselaw supports the proposition that disputes as to the effect of collective-bargaining agreements on representation in an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board."). The National Mediation Board ("Board"), in turn, has ruled in several cases, including two cases involving the Republic and Ozark unions seeking relief here, that the certifications of an acquired carrier's unions may be extinguished when the carriers combine to form a "single transportation system." Republic Airlines, 8 N.M.B. 49, 55 (1980); see also Trans World Airlines/Ozark Airlines, 14 N.M.B. 218 (1987); Northwest Airlines, 13 N.M.B. 399 (1986).[4]
 
 
 9
 The question that is left unanswered by the foregoing cases is whether the collective bargaining agreement of an acquired or acquiring carrier is extinguished upon a union's loss of certification.[5] If this is the case, then the affected employees would be deprived of the precise protection that DOT assumes to be available in lieu of LPPs.
 
 
 10
 Even though DOT counsel conceded at oral argument that such a scenario would indeed pose a significant concern, he contended that the unions could not have lost their certifications in the TAC-Eastern case because the carriers had presented no plans to merge. However, this argument fails to recognize that the Board's decertification decisions have not turned on whether the airlines formally merge; instead, the Board has looked behind corporate shells to determine whether the carriers have, in fact, combined into a "single transportation system." Republic Airlines, 8 N.M.B. at 55.[6] Even if a merger were a prerequisite to Board decertification, there was nothing to prevent the carriers from merging after DOT approved the acquisition.[7] Indeed, TWA and Ozark formally merged after DOT approved the acquisition, even though they represented to DOT that they would not.
 
 
 11
 We conclude that, because DOT relies so heavily on the unions' ability to negotiate for pre-acquisition protections through collective bargaining, it acted in an arbitrary and capricious manner in failing to consider the possibility that these bargained-for protections might be lost after the acquisitions were approved.[8] This issue must be addressed by DOT. Accordingly, insofar as they reject the unions' request for LPPs, DOT's orders in the TAC-Eastern acquisition are reversed and remanded. On remand, DOT must reevaluate its denial of LPPs in light of the fact that a critical justification for its actions may not be valid.
 
 
 12
 This relief is, however, not available to the petitioners in the Northwest-Republic and TWA-Ozark cases. The unions in these two cases failed to raise below the specific argument that collective bargaining protections might be unavailable due to the loss of union certification, and have not offered a reasonable explanation for their failure to do so. Thus, they are barred from raising it in this court on appeal. See 49 U.S.C. Sec. 1486(e) (1982); Air Line Pilots Ass'n v. CAB, 502 F.2d 453, 457 (D.C.Cir.1974), cert. denied, 420 U.S. 972, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975).[9] Therefore, their petitions for review must be denied as unmeritorious under the settled precedent of ALPA.
 
 
 13
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 292(a) (1982)
 
 
 [1]
 The standard LPPs provide, inter alia, displacement and dismissal allowances to employees adversely affected by the transaction, the equitable integration of seniority lists, and binding arbitration of disputes relating to the LPPs. See Allegheny-Mohawk Merger Case, 59 C.A.B. 22 (1972)
 
 
 [2]
 The Civil Aeronautics Board ("CAB") administered the Act until its sunset in 1984, at which time DOT assumed this responsibility
 
 
 [3]
 It is well settled that "we are bound by the principle of stare decisis to 'abide by a recent decision of one panel of this court unless the panel has withdrawn the opinion or the court en banc has overruled it.' " Association of Civilian Technicians v. FLRA, 756 F.2d 172, 176 (D.C.Cir.1985) (quoting Brewster v. Commissioner, 607 F.2d 1369, 1373 (D.C.Cir.) (per curiam), cert. denied, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979)). Consequently, we decline to entertain the claims based on the text of the ADA and subsequent legislative actions that were squarely rejected in ALPA and in Braniff Master Executive Council v. CAB, 693 F.2d 220 (D.C.Cir.1982)
 
 
 [4]
 The Board apparently has not restricted its decertification rationale to cases in which employees represented by a union find themselves a minority of a craft after consummation of the acquisition
 
 
 [5]
 See Teamsters, 717 F.2d at 163 ("the collective bargaining agreement reached as a result of a certification should not survive termination of the certification itself") (dictum). The dictum in Teamsters could be read to suggest that the agreement is extinguished without regard to whether the affected employees will be denied vested rights under the collective bargaining contract. We neither endorse nor reject this suggestion; we merely note the possible reach of the decision, which serves to highlight the unions' concern in this case
 
 
 [6]
 See note 4 supra
 
 
 [7]
 Although the carriers had agreed not to merge for at least two years, see Answer of the Joint Applicants to Objections to Order to Show Cause at 29, Joint Appendix (TAC-Eastern) 461, the carriers presumably were free to modify this agreement
 
 
 [8]
 This possibility seems most troublesome when a smaller, unionized carrier is acquired by a larger, non-unionized carrier, since the acquired carrier's employees presumably will have no representative to assert their interests following the acquisition
 
 
 [9]
 By contrast, the unions in the TAC-Eastern case did raise this claim before DOT. See Response of the Air Line Pilots Association, International, to Order to Show Cause (July 30, 1986) at 23-24. Since this issue was not addressed by the panel in ALPA, the unions in the TAC-Eastern case were fully entitled to raise it on this appeal