INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO and IAM District Lodge 143, Appellees,

v.

NORTHWEST AIRLINES, INC., Appellant.

No. 87–5523.

United States Court of Appeals, Eighth Circuit.

March 18, 1988.

John J. Gallgher, Washington, D.C., for appellant.

Joseph Guerrieri, Jr., Washington, D.C., for appellees.

Before HEANEY, BOWMAN, and MAGILL, Circuit Judges.

ORDER

The order of the District Court granting a preliminary injunction is reversed for the following reasons:

1) The National Mediation Board is not vested with adjudicative power of the issues presented;

2) The appellees' request for mediation before the National Mediation Board based on a transition agreement was illegal because it contained non-mandatory bargaining issues;

3) The Norris–LaGuardia Act is applicable and prohibits the issuance of a preliminary injunction in view of appellees' conduct.

A clarifying opinion will follow.

HEANEY, Circuit Judge, dissenting.

There is no reason for this Court to rush to judgment in this matter. Judge Diana Murphy currently has under submission cross motions for summary judgment. To this point, she has handled the matter expeditiously. There is no reason to expect that she will delay her ruling, and this Court will certainly handle any appeal from her decision on that order promptly. I fail to see the harm to either party of delaying our judgment in the matter for the short time it will take Judge Murphy to decide the issues before her, so that we will have the benefit of a full opinion from her in making our decision.

1. Irreparable Harm

There is nothing in the record to indicate that the International Association of Machinists intends to go on strike, and Northwest has failed to present evidence indicating that it will be irreparably injured if we were to await Judge Murphy's decision. Of course, Northwest will be greatly advantaged by the order issued today. The order will permit Northwest unilaterally to implement a new agreement for the white book employees (the mechanics who formerly worked for Republic), thus obviating any possibility of the parties negotiating a transition agreement that will cover all of the mechanics who currently work for it or that the parties will reach a white book agreement with the benefit of mediation.

2. Likelihood of Success on the Merits

Northwest has failed to demonstrate that it is ultimately likely to prevail on the merits of this appeal. A simple statement of the facts as found by the district court is more than sufficient to establish this fact. On August 12, 1986, Northwest merged with Republic Airlines. Immediately thereafter, Northwest initiated negotiations with the machinists' union. *Northwest proposed* that the parties enter into a transition agreement which would merge the three collective bargaining agreements covering employees represented by the IAM. More than a dozen meetings were held to achieve this goal.

In May of 1987, the National Mediation Board issued new class certifications and declared IAM the sole representative of all clerical, office and flight passenger service personnel. The IAM already represented all mechanics and related craft employees. On June 15, Northwest submitted new pro-

posals to the IAM which covered mechanics, station agents, clerical employees, and fleet and passenger service employees. These proposals would have merged the three collective bargaining agreements.

During the course of negotiations, it became clear that a major impediment to reaching a transition agreement was disagreement over part-time employment for Republic station agents. Northwest wanted to retain these former Republic employees as part-time personnel. The IAM insisted that they become full-time employees.

On June 19, 1987, Northwest applied to the National Mediation Board for mediation of the dispute relating to the former Republic Airline mechanics and related personnel (white book employees only). The union objected to the notice. Its position was that the mediation board should require the parties to mediate on all of the issues that they had been negotiating up to that point. The board refused to decide questions concerning the scope of the negotiations. It said:

> It is the NMB's established practice not to adjudicate contentions between the parties regarding the legal adequacy of the particular mediation application's Section 6 notice. Such an adjudicatory role in mediation matters would conflict with the Board's mediatory responsibilities and would compromise the NMB's ability to resolve current and future disputes through mediation.

The Executive Director of the Board subsequently told Northwest that the scope of negotiations was an issue for the courts to determine, and after that determination the Mediation Board could proceed accordingly.

On October 21, 1987, Northwest withdrew its request for mediation. It stated:

> Northwest Airlines and the IAM have agreed to resume direct negotiations on Tuesday, October 27, 1987.
>
> This is to advise you [the Mediation Board] that Northwest Airlines' application for mediation dated June 19, 1987 is hereby withdrawn.

At this point, according to Judge Murphy:

A negotiating meeting took place on October 27, 1987, where Northwest for the first time made a proposal limited almost solely to the White Book [footnote omitted]. That meeting lasted only about one-half hour, however, and was adjourned in disharmony when the IAM recognized that Northwest was offering terms substantially identical to the Brown Book as its White Book proposal. *See* Defendant's Exhibit 47. A second meeting was held November 4, 1987, where no progress was made. Northwest then declared impasse.. The IAM applied to the NMB for mediation on November 10, 1987, in an attempt to preserve the status quo, and in what it terms, "an abundance of caution."

Northwest refused to recognize the validity of the IAM's application for mediation, and announced a unilateral revision of the terms and conditions of employment for the White Book employees.

The IAM then went into district court and asked the court to restrain Northwest from implementing the new white book agreement. Judge Murphy granted a preliminary injunction prohibiting Northwest from implementing a new agreement.

Northwest promptly appealed to this Court. A short time later, it filed a motion for a summary judgment in the district court. IAM filed a cross motion for a summary judgment.

In my view, Judge Murphy's decision was correct from the legal standpoint and she did not abuse her discretion in granting the preliminary injunction. The inescapable facts are:

* The parties negotiated on the transition agreement for several months.

* It was Northwest's stated intention to reach an agreement which would merge the white book, the orange book and the brown book.

* The IAM has never refused to participate in negotiations regarding the white book only.

* Northwest has never renewed its request to the National Mediation Board that it mediate a dispute relating to the

white book only, and the IAM has made it clear that they would not refuse to participate in such mediation sessions.

Under these circumstances, Northwest does not have a right to unilaterally implement a new collective bargaining agreement covering the white book employees.

### 3. Remedy

If it be assumed that IAM is committing an unfair labor practice by insisting that bargaining take place with respect to all books, white, brown and orange, then the appropriate thing for this Court to do is to hold that IAM is in error in so insisting and to enter an order requiring the IAM to bargain in good faith with Northwest with respect to the white book employees only. *That is the only remedy suggested by the National Mediation Board,* and we should go no further than that here. If we enter that order and if the parties are unable to reach an agreement, then it will be incumbent on Northwest to exhaust the procedures of the Railway Labor Act before unilaterally adopting a new contract. Obviously, if IAM refused to participate in the mediation sessions or if it does not participate and refused to reach an agreement with respect to these employees only, Northwest would be justified in declaring an impasse and imposing a unilateral settlement. But that point has not been reached as of this date. In light of the fact that there were months of negotiation on the transition agreement and only a few days negotiation on a white book agreement, it strains all logic and good sense to hold that Northwest to unilaterally impose a collective bargaining agreement on the white book employees at this juncture.

Today, the Court interjects itself into a major dispute in an unprecedented manner and at a time when the district court has under submission cross motions for a summary judgment. There is no legal authority for this action and no showing has been made that the district court abused its discretion in granting temporary relief.