**ASSOCIATION OF FLIGHT ATTENDANTS, AFL–CIO, Appellant,**

v.

**USAIR, INC., Appellee.**

No. 92–7253.

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1994.

Decided June 7, 1994.

---

Edward J. Gilmartin argued the cause, for appellant. With him on the briefs was Nancy E. Segal.

Thomas E. Reinert, Jr. argued the cause, for appellee. With him on the brief were Sarah H. Lamar and Betty Leach Hawkins.

Before: WALD, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In 1992, USAir, Inc. ("USAir") entered into a ten-year arrangement with Shuttle, Inc. ("Shuttle"), pursuant to which USAir assumed managerial control of Shuttle's flight operations. When this deal was executed, the flight attendants employed by USAir were represented by appellant Association of Flight Attendants ("AFA"), and these employees were covered by a collective bargaining agreement between AFA and USAir (the "AFA–USAir agreement"). Shuttle's flight attendants were represented by the Transport Workers Union ("TWU"), and they were covered by a collective bargaining agreement that had been negotiated by Eastern Airlines and TWU (the "Eastern–TWU agreement"). Subsequently, after holding representation hearings, the National Mediation Board declared USAir and Shuttle to be a single transportation system, extinguished TWU's certification, and certified AFA as the bargaining representative for both Shuttle and USAir flight attendants. USAir then recognized AFA as the representative of Shuttle flight attendants, but it insisted that those employees were still covered by the terms of the Eastern–TWU agreement. AFA claimed that the AFA–USAir agreement should be extended to cover Shuttle flight attendants.

AFA filed suit for declaratory and injunctive relief in the District Court, asserting that, because the Eastern–TWU agreement must have expired when TWU's certification was extinguished, the AFA–USAir agreement necessarily establishes the terms and conditions to be applied to Shuttle flight attendants until a new agreement is negotiated. USAir maintained that Shuttle flight attendants were covered by the terms of the Eastern–TWU contract until the parties reached a different arrangement. The District Court treated the parties' submissions as cross-motions for summary judgment, and granted USAir's motion. We affirm.

It is clear that Shuttle flight attendants are not covered by the terms of the existing collective bargaining agreement between USAir and AFA. Thus, they cannot claim benefits under that agreement absent a negotiated accord to that effect. It is also clear that neither USAir nor AFA is contractually bound by the Eastern–TWU agreement, for these parties have not assented to any of the terms of that agreement. Nonetheless, insofar as the Eastern–TWU agreement establishes conditions of employment for Shuttle flight attendants, the agreement fixes the "status quo" (i.e., the starting point) in the bargaining relationship between USAir and AFA on behalf of Shuttle flight attendants. This means that, under the Railway Labor Act ("RLA" or "Act"), 45 U.S.C. § 156 (1988), the terms of the Eastern–TWU agreement will continue to govern the rates of pay, rules, and working conditions of Shuttle flight attendants until USAir and AFA agree otherwise.

I. BACKGROUND

The facts of this case are not in dispute. AFA is the duly certified representative of the approximately 9000 flight attendants employed by USAir. At all times relevant to this case, AFA and USAir have been parties to a collective bargaining agreement covering rates of pay, rules, and working conditions for USAir flight attendants.[1] Shuttle, which

1. When AFA filed this suit on September 23, 1992, the governing collective bargaining agreement had been effective since September 1, 1988, and the parties had been negotiating changes to

the agreement since November 1989, pursuant to section 6 of the RLA, 45 U.S.C. § 156. A new agreement went into effect on April 1, 1993, after

currently employs approximately 240 flight attendants, has undergone several incarnations. It began its corporate life as the Eastern Airlines Shuttle ("Eastern"). Eastern's flight attendants were represented by TWU and were covered by the Eastern–TWU collective bargaining agreement. After Donald Trump purchased Eastern's assets and operations in 1989, the carrier operated briefly as the Trump Shuttle. Trump Shuttle voluntarily recognized TWU as the flight attendants' representative and it applied the Eastern–TWU agreement to those employees. Shuttle, the present-day carrier, was incorporated in April 1992 through a corporate merger with Trump Shuttle.

On April 10, 1992, USAir entered into a ten-year management agreement ("Management Agreement") with Shuttle. Under this Management Agreement, USAir assumed complete managerial control of Shuttle.[2] USAir is responsible for all aspects of Shuttle's management, including fares, financial recordkeeping, advertising and promotions, aircraft maintenance, and labor relations. USAir has authority to negotiate new collective bargaining agreements on Shuttle's behalf, but any agreements costing Shuttle over $2 million annually must be approved by Shuttle's board of directors. USAir has no present equity interest in Shuttle, but it has an option to purchase a controlling interest in the company effective October 10, 1996. Under the Management Agreement, Shuttle personnel remain employed by Shuttle.

The issue of what employment terms and conditions would govern the Shuttle flight attendants has been contentious from the first. In November 1991, prior to entering into the Management Agreement, USAir met with representatives of both TWU and AFA and informed the unions it did not plan to integrate the USAir and Shuttle flight attendants because it would be too costly to apply the terms of the AFA–USAir agree-

ment to Shuttle flight attendants. USAir also pointed out that the consortium of banks that owned Shuttle wanted to be able to sell Shuttle to another carrier without interruption in service in the event that USAir did not exercise its purchase option. Thus, beginning in January 1992, USAir and AFA representatives discussed entering into a "fence" agreement that would formally segregate USAir and Shuttle flight attendants by providing that they would continue to work on their respective separate routes under separate collective bargaining agreements. AFA took the position that *unless* the parties signed a fence agreement, Shuttle flight attendants would be subject to the terms of the AFA–USAir agreement, rather than the Eastern–TWU agreement. USAir maintained, and continues to maintain, that a fence agreement was a convenience, not a legal necessity.

The parties were unable to conclude a fence agreement and, upon assuming control of Shuttle in April 1992, USAir continued to deal with TWU and to administer the terms of the Eastern–TWU collective bargaining agreement. In that month, a petition was filed with the National Mediation Board ("NMB" or "Board") for a determination of the effect of the Management Agreement on union representation. On August 10, 1992, after holding hearings, the Board issued a decision declaring USAir and Shuttle to be a "single transportation system for purposes of Section 152, Ninth of the Railway Labor Act." *USAir, Inc./Shuttle, Inc.*, 19 N.M.B. 388, 416 (1992). Accordingly, the Board extended AFA's certification to cover Shuttle flight attendants and extinguished TWU's certification. *See id.* at 417. The Board's decision did not address any issues concerning the effect of change in representation on the validity of the existing collective bargaining agreements.[3]

---

the District Court rendered its decision in this case.

2. Since the consummation of the Management Agreement, Shuttle has been operated as the "USAir Shuttle." For the sake of clarity, however, this opinion will continue to refer to the carrier simply as "Shuttle."

3. Indeed, the Board has no authority to adjudicate such contractual issues. *See Chicago & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 581, 91 S.Ct. 1731, 1737, 29 L.Ed.2d 187 (1971).

Following the Board's decision, USAir dealt exclusively with AFA as the representative of Shuttle flight attendants, but continued to apply the terms of the Eastern–TWU collective bargaining agreement to those employees. Thus, there currently is no integrated seniority list for Shuttle and USAir flight attendants and each group works only on routes covered by its respective carrier.

On September 23, 1992, AFA filed suit in the District Court alleging that, by enforcing the terms of the Eastern–TWU agreement, USAir had unilaterally repudiated the governing AFA–USAir agreement and had violated its statutory duty to maintain the "status quo" while seeking to amend an extant collective bargaining agreement. AFA also alleged that these actions constituted a refusal to treat with AFA in violation of the Board's certification order under Section 2, Ninth of the RLA; and that they undermined AFA's status as the bargaining representative for both USAir and Shuttle flight attendants. AFA sought declaratory and injunctive relief.

The parties agreed that the preliminary injunction hearing should be consolidated with a hearing on the merits, and the trial court ordered that the parties' submissions be treated as cross-motions for summary judgment. On November 30, 1992, the District Court issued an opinion granting summary judgment for USAir. *Association of Flight Attendants v. USAir, Inc.*, 807 F.Supp. 827 (D.D.C.1992). The District Court determined that the termination of TWU's certification did not automatically extinguish the Eastern–TWU collective bargaining agreement, and that USAir therefore properly maintained the status quo by applying the terms of that agreement to Shuttle flight attendants. In this appeal, AFA renews its contention that USAir has violated the Act's status quo requirement.

## II. Discussion

### A. *Standard of Review and Applicable Law*

■ Summary judgment is appropriate when the pleadings, depositions and other evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). This court reviews grants of summary judgment *de novo, Doe v. Gates*, 981 F.2d 1316, 1322 (D.C.Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 282 (1993), and when the material facts are not in dispute, "our task is to ensure that the District Court correctly applied the relevant law to the undisputed facts." *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 284 (D.C.Cir. 1993). Resolution of this case turns principally on the question whether, as a matter of law, the Board's termination of TWU's certification simultaneously caused the "status quo" for Shuttle flight attendants to be changed so as to be defined by the terms in the AFA–USAir agreement rather than those in the Eastern–TWU agreement. We conclude that it did not have this effect and therefore affirm the District Court's judgment for USAir.

■ Under the RLA, disputes concerning the terms of collective bargaining agreements fall into one of two categories. "Minor" disputes relate "either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. . . . In either case the claim is to rights accrued, not merely to have new ones created for the future." *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). The RLA prescribes that minor disputes shall be resolved through mandatory and binding arbitration before the National Railroad Adjustment Board. *See* 45 U.S.C. §§ 153, 184 (1988). "Major" disputes, on the other hand, arise when the parties seek to create a collective bargaining agreement or to alter the terms of an existing agreement; the issue in major disputes, therefore, "is not whether an existing agreement controls the controversy." *Elgin, Joliet & E. Ry. Co.*, 325 U.S. at 723, 65 S.Ct. at 1289; *see also* 45 U.S.C. § 156 (1988). Major disputes are subject to a "purposely long and drawn out" resolution process under the RLA. *Brotherhood of Ry. & S.S. Clerks v. Florida East Coast Ry. Co.*, 384 U.S. 238, 246, 86 S.Ct. 1420, 1424, 16

L.Ed.2d 501 (1966). Section 6 requires parties to give notice of intent to change a collective bargaining agreement, 45 U.S.C. § 156, following which the parties must negotiate directly over the proposed changes. *Id.* § 152 Second. If the parties are unable to agree, either party may invoke the mediation services of the Board. If mediation fails, the Board must proffer binding arbitration, which either party is free to reject. *Id.* § 155 First. If the parties refuse to submit to arbitration, they may resort to self-help after a thirty-day cooling-off period. *See generally Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 149 & n. 14, 90 S.Ct. 294, 298 & n. 14, 24 L.Ed.2d 325 (1969).

■ The legal dispute in this case turns on the so-called "status quo" provision of section 6. That provision directs that, while the major dispute resolution procedures are being followed, "rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by [the RLA]. . . ." 45 U.S.C. § 156; *see also id.* § 152 Seventh ("No carrier . . . shall change the rates of pay, rules, or working conditions of its employees . . . except in the manner prescribed in [collective bargaining] agreements or in section 156 of this title."). AFA claims that USAir has violated the status quo requirement by applying the terms of the Eastern–TWU collective bargaining agreement, rather than the AFA–USAir agreement, to Shuttle flight attendants. This case presents a major dispute because AFA alleges that USAir has unilaterally altered the Shuttle flight attendants' terms and conditions of employment without following the RLA's procedures.[4]

AFA's claim necessarily is premised on the twin assumptions that, when the Board extinguished TWU's certification and certified AFA as the representative of Shuttle flight attendants, (1) the Eastern–TWU agreement simultaneously became a dead letter, and (2) the AFA–USAir agreement automatically became the applicable "status quo" that USAir was bound to observe pending completion of the statutory dispute resolution procedures. Because we find no support as a matter of law for either of these assumptions, we affirm the District Court's grant of summary judgment for USAir.

**B. *The Applicable "Status Quo"***

■ The parties agree that this case presents a single question: What is the "status quo" for the Shuttle flight attendants to be observed by the parties pending negotiation of a new collective bargaining agreement? As we will explain, AFA has offered no credible basis either in law or contract from which we may conclude that the AFA–USAir agreement represents the status quo for Shuttle flight attendants. Rather, our review of the Act and relevant case law leads us to conclude that the mere change in union representative had no effect on the status quo applicable to Shuttle flight attendants. Thus, the Eastern–TWU agreement continues to define the status quo—that is, the parameters of the duty to bargain—which USAir must observe until a new agreement is reached.

■ We begin with the observation that nothing in the RLA *per se* requires employees of the same craft or class in a particular system to be subject to the same terms and conditions of employment. While the Board has long interpreted the Act to require system-wide representation certifications, *see Missouri Pacific R.R. (Union Pacific)*, 15 N.M.B. 95, 104 (1988), it has not similarly construed the Act to require system-wide collective bargaining agreements.[5] In other

---

4. Because AFA contends that this case presents a major dispute and thus properly belongs in federal court, we are puzzled by its simultaneous assertion that the case can be resolved by reference to the AFA–USAir collective bargaining agreement. Ordinarily, if the parties disagree about whether simple contract interpretation will resolve a dispute, the dispute is minor and should be sent to binding arbitration. *See International Ass'n of Machinists v. Soo Line R.R. Co.,*

850 F.2d 368, 376 (8th Cir.1988) (*en banc*), *cert. denied*, 489 U.S. 1010, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989). As we explain more fully below, however, AFA's contract-based argument is meritless and this dispute therefore cannot be categorized as "minor."

5. The Board has merely expressed a preference for—or, in its words, a "commitment to"—system-wide collective bargaining. *Atchison, Tope-*

words, a single craft or class of employees on a particular carrier may not have more than one certified representative, but members of that class may be covered by different collective bargaining agreements. Counsel for AFA expressly conceded this point at oral argument. Thus, we may eliminate one possible basis for AFA's claim that Shuttle flight attendants were *necessarily* covered by the AFA–USAir agreement when AFA became the certified representative for Shuttle flight attendants.

Nor is AFA's claim persuasive as a matter of contract. The AFA–USAir agreement nowhere *mandates* that its coverage be extended to new units of flight attendants, and AFA makes no reasonable claim to the contrary. Furthermore, this case is distinguishable from the ordinary "new hires" situation in which newly hired employees are simply folded into the existing class of a carrier's flight attendants. What we have here, by contrast, is the addition of a discrete unit of flight attendants who are not even formally USAir employees, and who AFA itself concedes are not expressly covered or contemplated by the existing contract. The contract does not contain an unusually broad recognition clause, an accretion provision, a merger clause, or other like contractual terms. Yet, there is no doubt that AFA and USAir could have included some such clause in their agreement to cover new units or groups of flight attendants added to the USAir transportation system. In that case, any dispute whether Shuttle flight attendants were covered would be a question concerning "the meaning or proper application of a particular provision with reference to a specific situation," and thus would be a minor dispute subject to mandatory arbitration, rather than judicial review. *Elgin, Joliet & E. Ry. Co.*, 325 U.S. at 723, 65 S.Ct. at 1289–90. As the contract is written, however, there simply is no colorable basis for AFA's insistence that its terms be extended to cover Shuttle flight attendants.

Having concluded that neither the RLA nor the contract *requires* that AFA's collec-

tive bargaining agreement apply to Shuttle flight attendants, we now must determine, based upon the policies of the Act, which collective bargaining agreement should be considered to be the status quo. A relevant starting point for this analysis is the well-established principle that a mere change of representatives does not alter otherwise applicable contractual agreements. This has been the policy of the Board since its inception in 1934:

> When there is an agreement in effect between a carrier and its employees signed by one set of representatives and the employees choose new representatives who are certified by the Board, the Board has taken the position that a change in representation does not alter or cancel any existing agreement made in behalf of the employees by their previous representatives.

FIRST ANNUAL REPORT OF THE NATIONAL MEDIATION BOARD 23–24 (1935). The Board has reasoned that "[t]he purpose of such a policy is to emphasize a principle of the Railway Labor Act that agreements are between the employees and the carrier, and that the change of an employee representative does not automatically change the contents of an agreement." FORTY-SECOND ANNUAL REPORT OF THE NATIONAL MEDIATION BOARD 39 (1976).

■ Although we are not bound by the Board's policy statements on contractual issues, they carry significant weight when, as here, the operative principle has been endorsed by federal courts. *See International Ass'n of Machinists v. Northwest Airlines, Inc.*, 843 F.2d 1119, 1123 n. 5 (8th Cir.), *vacated as moot*, 854 F.2d 1088 (8th Cir. 1988); *International Bhd. of Teamsters v. Texas Int'l Airlines, Inc.*, 717 F.2d 157, 163 (5th Cir.1983) [*"Texas International"*]. Thus, AFA's insistence that the Eastern–TWU agreement necessarily ceased to be the status quo when AFA succeeded TWU as the certified representative of Shuttle flight attendants is undercut by precedent holding that contractual agreements generally survive a change in representative. Moreover, as an intuitive matter, there is good reason to apply the foregoing policy in this instance.

*ka & Santa Fe Ry. Co.*, 12 N.M.B. 95, 110 (1985). It has not held that the Act mandates such bar-

gaining.

If, in the typical case where employees *choose* a new representative, the law nonetheless. indulges the presumption that the employees were satisfied with their existing bargaining agreement and wish it to remain in force, it makes no sense to stray from that presumption in cases, such as this one, where the employees have not voted out their representative, but have had a new one *imposed* on them.

USAir next points us to cases involving airline mergers, arguing that those cases demonstrate that the collective bargaining agreements of the merged or absorbed carrier survive the mergers. We think the case law on this point (which is sparse) is far from clear. Indeed, our view has been that it is an "unanswered" question "whether the collective bargaining agreement of an acquired or acquiring carrier is extinguished upon a union's loss of certification." *Air Line Pilots Ass'n, Int'l v. United States Dep't of Transp.*, 838 F.2d 563, 566 (D.C.Cir.1988). Although it is true as a *factual* matter that in many instances the acquiring carrier has continued to honor the terms of a pre-merger collective bargaining agreement, we can draw only a limited inference about the *legal* effect of a merger. This is so because, in the cases we have found, the unions either did not challenge the applicability of the pre-merger agreement or the parties expressly agreed to abide by its terms. *See, e.g., Brotherhood of Maintenance of Way Employees v. Grand Trunk Western R.R. Co.*, 961 F.2d 1245, 1246 (6th Cir.1992); *International Ass'n of Machinists*, 843 F.2d at 1120–21; *Trans Int'l Airlines, Inc. v. International Bhd. of Teamsters*, 650 F.2d 949, 964–65 & n. 11 (9th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981); *International Ass'n of Machinists v. Northwest Air-*

lines, Inc., ·674 F.Supp. 1387, 1388–89 (D.Minn.1987), *rev'd*, 842 F.2d 206 (8th Cir. 1988).

■ Although it appears that no court has expressly decided the question,[6] we see no reason why the general principle that collective bargaining agreements survive a change in representative, at least for status quo purposes, should not apply to the type of transfer-of-control transaction involved here, absent agreement to the contrary. Such a conclusion comports best with the RLA's overriding purpose of promoting stability in rail and air labor relations. *See Burlington Northern R.R. Co. v. Brotherhood of Maintenance of Way Employes*, 481 U.S. 429, 444, 107 S.Ct. 1841, 1850–51, 95 L.Ed.2d 381 (1987); *Chicago & N.W. Ry. Co.*, 402 U.S. at 574. As the Supreme Court has recognized, the RLA's "status quo requirement is central to its design." *Detroit & Toledo Shore Line*, 396 U.S. at 150, 90 S.Ct. at 299. Yet, under AFA's theory of this case, the Shuttle flight attendants, who neither sought nor ratified the Management Agreement between Shuttle and USAir, would suddenly be stripped of the contractual terms negotiated on their behalf and stuck with employment terms that were not designed with them in mind.[7] Such a result makes no sense, and it finds no support in the law.

■ We hasten, however, to make clear the limits of our decision in this case: we hold only that the provisions of the Eastern–TWU agreement constitute the status quo conditions which USAir must observe until those provisions are changed; that is, the Eastern–TWU contract provisions define the parameters of the parties' duty· to bargain. Absent agreement to the contrary, the employees in an "absorbed" unit start out with the rates of pay, rules, and working condi-

---

6. In the merger context, the Fifth Circuit has stated, in dicta and without any analysis or citation of authority, that "[i]f the Mediation Board certified another representative, as the Union concedes it would have the power to do, the contract would terminate." *Texas International*, 717 F.2d at 164. We do not view this unadorned statement as dispositive of the question. *See Air Line Pilots Ass'n*, 838 F.2d at 566 & n. 5 (finding question of validity of collective bargaining agreements in such situations still "unanswered" notwithstanding dicta in *Texas International* opinion). *But see Brotherhood of Ry. Carmen v.*

*ICC*, 880 F.2d 562, 570 (D.C.Cir.1989) (citing *Texas International* in dicta), *rev'd*, 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991).

7. According to AFA, the terms of the AFA–USAir agreement are more favorable than those of the Eastern–TWU agreement. Thus, as it happens in this particular case, the Shuttle flight attendants are disadvantaged by our holding. The status quo advantage will vary from case to case, however, and our holding does not rest on the fortuity of which collective bargaining agreement is preferable to which party.

tions existing under the contract in effect before the change in representative. The carrier may not unilaterally modify these terms except pursuant to bargaining and after exhausting the procedures set forth in sections 155 and 156 of the Act. We do *not* hold, however, that the Shuttle flight attendants or their new bargaining agent, AFA, are in any way limited by the Eastern–TWU contract in their pursuit of new terms of employment, or that they are locked into the old contract for any defined period of time, regardless of what that contract may provide. In other words, USAir cannot refuse to bargain over new terms based on a claim that bargaining has been settled under the pre-existing contract. Instead, we hold that a newly certified union in situations such as this one has full bargaining rights with respect to covered employees without regard to whether the employees previously have been covered by a collective bargaining agreement. However, the parties of course need a starting point—or status quo—while a new agreement is negotiated, and, for the reasons given, we conclude that the terms of the Eastern–TWU agreement represent the status quo.

### C. *Infringement on the Board's Jurisdiction Over Representation Decisions*

■ Taking another tack, AFA advances a somewhat bizarre argument, as follows:
> Given the Board's exclusive jurisdiction over representation disputes, courts have repeatedly rejected union attempts at post-merger judicial enforcement of a premerger CBA where the union's status is in doubt, for to do so would be the "functional equivalent of the [representation] certificate the NMB alone can issue."

Appellant's Brief at 34 (citation omitted). The argument is bizarre because, on its face, it would require the dismissal of AFA's suit as an impermissible attempt to "enforce" the "premerger CBA" between AFA and USAir. Obviously, this cannot be what AFA means to argue. Rather, in the context of this case, AFA appears to be claiming that judicial recognition of the Eastern–TWU collective bargaining agreement as the status quo will violate Section 2, Ninth of the Act, as such recognition is the same as enforcing that agreement, and that enforcement is the func-

tional equivalent of determining representation—a task entrusted exclusively to the Board under the RLA. This is a specious argument. First, as we have explained, we do not decide today that the Eastern–TWU agreement is specifically enforceable; we hold only that its terms serve to define the status quo until a new agreement is reached. Second, there is no "representation dispute" in this case. TWU advances no claims as against AFA—the only dispute here is a "major" one between AFA and USAir. Finally, the precedent to which AFA points is, as we explain below, simply inapposite on the facts of this case.

The Board undoubtedly has exclusive jurisdiction over the "certification" of representatives under Section 2, Ninth. *See* 45 U.S.C. § 152 Ninth (1988). AFA contends that *Texas International* and *Association of Flight Attendants v. Delta Air Lines, Inc.,* 879 F.2d 906 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990), both airline merger cases, establish the rule that pre-merger collective bargaining agreements cannot survive when the Board extinguishes the union's certification. Both *Texas International* and *Delta* are fully distinguishable, however, because the result in each of those cases turned on the fact that the appellant was the union whose certification had been *extinguished* following the merger. The courts therefore legitimately were concerned that enforcement of the appellants' pre-merger agreements effectively would restore representation rights to the de-certified unions.

In the first case, Texas International Airlines was merged into Continental, a non-unionized carrier. Texas International's union, the Teamsters, sued after the merger for a declaration that its collective bargaining agreement was valid and for an injunction requiring Continental to comply with it. The Fifth Circuit held that it lacked jurisdiction to decide the dispute even though it was cast as a contract question, because resolution of the question required the court to determine who represented the employees—a matter within the Board's exclusive Section 2, Ninth jurisdiction. Because Continental was non-union, the Teamsters had an "indispensable role in administrating the agreement." *Texas Int'l,* 717 F.2d at 161.

Enforcement of the contract, therefore, inescapably entailed the continuance of the Union's role as employee representative for the minority group, in accordance with its 1980 certification. Continuation of the contract in force unavoidably constitutes a determination of employee representation. . . .

*Id.* The rationale of *Texas International* might have force in this case if TWU were in court seeking to administer the Eastern–TWU agreement on behalf of Shuttle flight attendants. Such a suit could be viewed as an indirect challenge to the Board's determination that AFA is the *sole* representative of all flight attendants on the USAir system. That is not the case before us, however.

I *Delta,* appellant AFA represented flight attendants on the merged carrier, Western Airlines. AFA's collective bargaining agreement with Western contained a successorship clause, but Western did not contractually bind Delta to the agreement. After the NMB extinguished AFA's certification, AFA sought damages from Western for breach of the successorship clause. The actual issue presented was whether the court had jurisdiction to compel arbitration of AFA's claim. *See Delta,* 879 F.2d at 907. The court held that it did, because AFA only sought damages, rather than specific performance of the clause. Citing *Texas International,* however, the court reasoned that it would have been powerless to order specific performance because that effectively would direct that AFA be reinstated as the flight attendants' representative, and such an order would trench on the Board's exclusive jurisdiction to certify representatives. *See id.* at 912–13.

In the instant case, our determination that the terms of the Eastern–TWU agreement represent the status quo which USAir must observe does not "have the effect . . . of deciding the representation issue," *Texas*

*Int'l,* 717 F.2d at 161, for no such issue exists here. All parties accept AFA as the representative of both Shuttle and USAir flight attendants; TWU is not a party to this suit, nor is it claiming any rights under a successorship clause or any other term of the Eastern–TWU agreement. AFA is perfectly capable of administering the terms of the Eastern–TWU agreement on behalf of the Shuttle flight attendants, and it makes no claim to the contrary. Thus, the concerns voiced in *Delta* and *Texas International* have no bearing on this case.[8]

### III. Conclusion

For the foregoing reasons, we affirm the District Court's grant of summary judgment in favor of USAir.

*So ordered.*

---

8. A third case on which AFA relies is similarly distinguishable. In *Western Airlines, Inc. v. International Brotherhood of Teamsters,* 480 U.S. 1301, 107 S.Ct. 1515, 94 L.Ed.2d 744 (O'Connor, Circuit Justice), *motion denied,* 481 U.S. 1002, 107 S.Ct. 1621, 95 L.Ed.2d 196 (1987), Western Airlines sought a stay of an appellate court order enjoining a merger pending arbitration of a successorship clause in the Teamsters' collective bargaining agreement. In granting the stay, Jus-

tice O'Connor reasoned that "[t]he great weight of the case law supports the proposition that disputes as to the effect of collective-bargaining agreements *on representation* in an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board." *Id.* 480 U.S. at 1305, 107 S.Ct. at 1517 (emphasis added). This case, however, presents no representation issue.