KRAUSE INTERNATIONAL, INC.
and E.J. Krause & Associates,
Inc., Plaintiffs,

v.

REED ELSEVIER, INC., Defendant.

REED ELSEVIER, INC. and Reed Exhibition Companies de Mexico S.A. de
C.V., Counterclaim Plaintiffs,

v.

KRAUSE INTERNATIONAL, INC. and
E.J. Krause & Associates, Inc.,
Counterclaim Defendants.

Civ. A. No. 94–1014–LFO.

United States District Court,
District of Columbia.

Aug. 31, 1994.

Douglas V. Rigler, Andrews & Kurth,
L.L.P., Washington, DC, for Krause Intern.

Wendy L. Addiss, Susan M. Muchmore,
Coudert Brothers, Washington, DC, for Reed
Pub.

*MEMORANDUM*

OBERDORFER, District Judge.

Plaintiffs, which stage trade shows in the computer industry, brought this trademark action under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). Plaintiffs claim that defendant's name for its computer trade show in Mexico ("COMDEX/COMEXPO") violates section 43(a) because it too closely resembles the name plaintiffs use for their own Mexican trade show ("EXPO COMM"). Defendant has countersued, claiming that its trademark is actually senior to plaintiffs' and that plaintiffs are therefore violating the Act.[1] Plaintiffs move for a preliminary injunction to prevent defendant from using its trademark for its next Mexican show, to take place in 1995, while this litigation is pending. Defendant has moved to stay the case; it asserts that pivotal issues in this lawsuit are already at stake in defendant's pending application for the disputed trademark before the Trademark Trial and Appeal Board. A hearing on plaintiffs' motion for a preliminary injunction took place on July 14, 1994. For the reasons stated in this Memorandum, the accompanying Order denies plaintiffs' motion for a preliminary injunction and defendant's motion for a stay.

## I.

The record establishes the following facts, which do not appear to be in dispute. Plaintiffs and defendant both operate trade shows in which manufacturers of computer and telecommunications technologies display their products to potential high-end customers. Both parties operate these shows around the world. They earn revenues by selling space at the shows to manufacturers, which are generally U.S. corporations. Plaintiffs have continuously used their "EXPO COMM" trademark to denote shows in various countries such as China since at least 1986. Defendant's Mexican subsidiary is the successor in interest of a company called Fapezal, which first used the "COMEXPO" trademark to denote its Mexican trade shows in 1987. Defendant's subsidiary purchased the trade

mark from Fapezal in 1993; a "COMEXPO" show has taken place in Mexico City each year since 1987. Defendant has recently entered into an agreement with the owner of another trademark, "COMDEX," which defendant combined with "COMEXPO" for its Mexican show and to which plaintiffs do not object. Plaintiffs operated their first Mexican trade show, using the "EXPO COMM" trademark, in 1991. The parties have previously settled litigation over competing trademarks for their shows in China.

## II.

Plaintiffs must satisfy a four-part test to secure a preliminary injunction. They must demonstrate a substantial likelihood of success on the merits; immediate and irreparable injury absent relief; that the threatened harm to them substantially outweighs any harm that an injunction might pose to defendant and third parties; and that the injunction they seek will serve the public interest. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977). Because plaintiffs have failed to make the first and third of these showings, their motion for a preliminary injunction must be denied.

## A.

 To succeed on the merits of their Lanham Act claim, plaintiffs must show that (1) they own a valid trademark; (2) their mark is distinctive or has acquired "secondary meaning"; and (3) that a likelihood of confusion exists between plaintiffs' and defendant's products. *American Association for the Advancement of Science v. Hearst Corp.*, 498 F.Supp. 244, 254 (D.D.C.1980). At the outset, defendant disputes plaintiffs' claim that they own a valid trademark. Defendant stresses that plaintiffs' trademark registration has been cancelled by the U.S. Patent and Trade Office. Plaintiffs concede the cancellation, but claim the cancellation is a technical matter that does not actually invalidate their ownership of or right to use the trademark. Defendant maintains that

---

1. Defendant is joined as a counterplaintiff by its subsidiary, Reed Exhibition Companies de Mexi

co. Unless otherwise noted, these entities will be referred to collectively as "defendant."

plaintiffs' lack of a registered trademark precludes their success on the merits under 15 U.S.C. § 1114(1). Plaintiffs' failure to resolve this concern squarely casts some doubt on their likelihood of success on the merits.

More significantly, plaintiffs have failed to show that their trademark has seniority over defendants' mark, a requirement implicit in all three prongs of the *Hearst* test. Defendant represents without contradiction that its predecessor, Fapezal, used its COMEXPO trademark for trade shows in Mexico since 1987, four years before plaintiffs first used their "EXPO COMM" mark in Mexico in 1991. Plaintiffs contend that their shows were larger and thus different in type from Fapezal's shows; defendant claims its shows were larger and featured the same class of exhibitors as do plaintiffs' shows. Plaintiffs contend that they had been using the "EXPO COMM" trademark worldwide since 1986, and that this use establishes the priority of their trademark worldwide, including in Mexico. Their theory is that, regardless of the country where the show takes place, the relevant market is the United States, where both parties solicit exhibitors for all of their shows worldwide.

At the July 14 hearing plaintiffs cited several cases to support their contention that trademark seniority should be determined by examining worldwide use rather than only use in Mexico. They rely most heavily on *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636 (D.C.Cir.1982), which is representative of their other authorities. In *Foxtrap*, the Court of Appeals for this circuit upheld an injunction in favor of the operator of a social club in the District of Columbia against the operator of a disco in Philadelphia. Plaintiffs rely on that holding to argue that a trademark's seniority extends beyond the geographic location of the product and, thus, that plaintiffs' trademark is senior to defen-

dant's in Mexico because plaintiffs were the first to use it somewhere in the world.

But *Foxtrap* is distinguishable. First, and most important, plaintiffs here, unlike in *Foxtrap*, used their trademark to advertise several different products—trade shows in different countries. Under *Foxtrap*, plaintiffs' use of their trademark to advertise their Chinese trade show arguably establishes the worldwide seniority of their trademark to denote their Chinese show; it does not establish seniority anywhere to denote an entirely different product, such as their Mexican show. Second, the distance between Philadelphia and Washington, D.C. suggests more obviously that products are in competition than does the distance between China and Mexico. Finally, *Foxtrap* did not present the situation here in which defendant had used its trademark in the locale at issue for several years before plaintiffs attempted to use their competing mark in the same locale. These distinctions render plaintiffs' proffered precedents inapposite. Without the support of those precedents, plaintiffs have failed to meet their burden of showing a substantial likelihood of success on the merits.[2]

As to irreparable injury, plaintiffs contend that a showing of likelihood of success on the merits automatically establishes irreparable harm in a trademark infringement action. "Trademark infringement and unfair competition are, by their very nature, activities that cause irreparable harm." *Sears, Roebuck & Co. v. Sears Financial Network*, 576 F.Supp. 857, 864 (D.D.C.1983). Because plaintiffs have failed to establish a likelihood of success on the merits, however, inquiry into this prong of the preliminary injunction standard is unnecessary.[3]

■ When considering the balance of hardships between the parties in infringement cases, courts generally favor the trade-

**2.** At the July 14 hearing, plaintiffs presented a letter dated September 23, 1988 from the Patent and Trademark Office of the Department of Commerce, which refused to register the "COMEXPO" trademark because of likelihood of confusion with plaintiffs' "EXPOCOMM CHINA" mark. The Office's administrative statement is not binding on this Court. *Association of Flight Attendants, AFL–CIO v. USAir, Inc.*, 24 F.3d 1432, 1440 (D.C.Cir.1994).

**3.** Plaintiffs' failure to demonstrate the seniority of its trademark also prevents them from showing that the injunction they seek would be in the public interest. Plaintiffs' argument on that point depends on the proposition that the public interest favors vindicating the rights of valid senior trademark owners.

mark owner. *See, e.g., Polo Fashions, Inc. v. Extra Special Products, Inc.,* 451 F.Supp. 555, 564 (S.D.N.Y.1978). However, as discussed above, plaintiffs are not likely to establish that they are the senior trademark owner here. In addition, plaintiffs contend that defendant has sufficient time to market a new name for its 1995 Mexican show. Defendant replies that the requested injunction would greatly hamper its ability to market and conduct its 1995 Mexican show. Defendant represented at the July 14 hearing that it has already advertised and has sold a substantial amount of space for that show. Ultimately, plaintiffs have failed to show why defendant's inability to use its trademark would cause it only negligible harm, while defendant's alleged infringement of plaintiffs' use of their trademark for the same purpose would cause irreparable injury.

■ Defendant also raises the significant point that granting injunctive relief for plaintiffs would alter rather than maintain the status quo. This is contrary to the ordinary function of preliminary injunctive relief. Preliminary injunctive relief ordinarily preserves "the last uncontested status which preceded the pending controversy." *Westinghouse Electric Corp. v. Free Sewing Machine Co.,* 256 F.2d 806, 808 (7th Cir.1958). In this case, the last uncontested status was both parties' uses of their competing trademarks for their Mexican trade shows between 1991 and 1994.

### III.

■ Defendant's application for the trademark at issue is currently pending before the Trademark Trial and Appeal Board, and plaintiffs have opposed that application. Testimony in the opposition proceeding is scheduled to be complete by November 13, 1994. Defendant concedes that the Board's determination on its application will neither bind this Court nor dispose of all the issues this action presents. However, defendant invokes the doctrine of primary jurisdiction to move for a stay on grounds of judicial efficiency because the Board's decision will "materially aid" a judicial determination. *See Ricci v. Chicago Mercantile Exchange,*

409 U.S. 289, 305, 93 S.Ct. 573, 582, 34 L.Ed.2d 525 (1973).

Defendant has made no showing that the Board's determination will be of the highly technical type that makes administrative adjudication more desirable than a judicial decision. Moreover, defendant has not demonstrated that a stay would yield concrete gains to judicial efficiency. In *Ricci,* "[t]he adjudication of the Commission ... [was] subject to judicial review and would obviate any necessity for the ... court to relitigate the issues actually disposed of by the agency decision." *Id.* A similar circumstance does not exist here. In addition, defendant has not demonstrated that the issues to be determined by the Board bear so heavily on the substance of this action as to require a stay.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 23rd day of August, 1994, hereby

ORDERED: that plaintiffs' motion for a preliminary injunction should be, and is hereby, DENIED; and it is further

ORDERED: that defendant's motion for a stay should be, and is hereby, DENIED; and it is further

ORDERED: that a status conference to discuss further proceedings in this matter shall take place on *September 29, 1994 at 1:45 p.m.* in Courtroom No. 3.